**T.W.E., Appellant,**

**v.**

**K.M.E., Appellee.**

**No. 04–91–00059–CV.**

Court of Appeals of Texas, San Antonio.

April 8, 1992.

Charles K. Tabet, Albert L. Rodriguez, San Antonio, for appellant.

Randal C. Gray, Randal C. Gray, P.C., New Braunfels, for appellee.

Before PEEPLES, CARR and GARCIA, JJ.

## OPINION

PEEPLES, Justice.

In this divorce case we consider the standing and the parental rights of a putative father whose biological paternity was refuted by blood tests. T.W.E. (Tommy) appeals an order dismissing his counterclaim for custody of a six-year-old child born during his ten-year marriage to K.M.E. (Karen). Because medical evidence refuted the possibility that Tommy is the child's biological father, the trial court held that he has no standing to seek appointment as managing conservator. We hold that even though Tommy is not the child's biological father, his six months' possession of the child before suit gave him standing to seek custody, and therefore we reverse and remand.

The parties were married in 1979. Four years later Karen gave birth to a boy, L.W.E. The evidence suggests that both Tommy and Karen knew that the child was the result of Karen's adulterous relationship with another man. Nevertheless, Tommy accepted the child as his own, and together the couple reared him for more than six years, always holding out to the public that Tommy was the father. Then, in December 1989 Karen took the child and left. She filed for divorce about three weeks later, alleging in her sworn petition that Tommy was the child's father. Tommy counterclaimed for appointment as managing conservator, also pleading he was the child's father. In response to that counterclaim, Karen amended her petition and denied Tommy's parentage, which § 12.06(a) of the family code permitted her to do.[1] After a hearing the trial court found clear and convincing evidence—in particular, blood tests and evidence of sterility at the relevant time—that Tommy was not the father, and dismissed his custody claim for lack of standing under § 11.03 of the Family Code.

Section 11.03 of the family code lists the classes of persons who have standing to seek custody of a child:

**§ 11.03. Who May Bring Suit**

(a) An original suit affecting the parent-child relationship may be brought at any time by:

    (1) a parent of the child; [or]

    . . . .

    (8) a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition

    . . . .

TEX.FAM.CODE ANN. § 11.03 (Vernon Supp. 1992). The term "parent" is defined as "the mother, a man presumed to be the biological father or a man who has been adjudicated to be the biological father. . . ." *Id.* § 11.01(3).

Tommy does not contest the evidence of his nonpaternity, but in his first point of error he claims standing under § 11.03(a), either because he is the child's psychological father, or because he had actual possession and control of the child for more than the six months immediately preceding the filing of the petition. We note that this is not a case in which a biological father asserts parental rights concerning a child whose mother he impregnated during her marriage to another man. *See, e.g., Mi-*

---

1. Section 12.06(a) provides, "In any suit affecting the parent-child relationship . . . a husband or wife is entitled to deny the husband's paternity of the child who is the subject of the suit and who was born or conceived during the marriage of the parties." TEX.FAM.CODE ANN. § 12.-06(a) (Vernon Supp.1992).

chael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989); *Gibson v. J.W.T.*, 815 S.W.2d 863 (Tex.App.—Beaumont 1991, writ requested).

In view of the blood tests and other evidence, we cannot hold that Tommy has standing as a parent under § 11.-03(a)(1) because blood tests can constitute clear and convincing evidence to rebut the presumption of paternity. *See In re S.C.V.*, 750 S.W.2d 762, 764 (Tex.1988); TEX.FAM.CODE ANN. § 12.02(b) (Vernon Supp.1992). But even though Tommy is not a biological parent, we conclude that he has standing to sue for appointment as managing conservator under § 11.03(a)(8) because he had actual possession and control of the child for six months immediately before the suit was filed.

Karen argued in the court below that Tommy did not have actual possession and control of the child during the three weeks after she took the child and left, and therefore he does not have standing under § 11.-03(a)(8). We reject that contention.

The plain purpose of paragraph (a)(8) is to create standing for those who have developed and maintained a relationship with a child over time. Six months is, in the judgment of the legislature, the minimum span of time needed to develop a significant relationship for purposes of standing to seek custody. The term "immediately preceding" insures that the relationship exists at the time of the court action, to prevent persons who no longer have a current relationship with a child from disrupting its life, and that of its family, with stale claims.

> The provision [in § 11.03(a)(8)] that the six months of actual possession of the child immediately precede the filing of the petition is intended to require expeditious action by the claimant, who should act with all due, deliberate, reasonable speed. The exact length of time allowable before it's "too late" should be left to the trial court's discretion.

John J. Sampson, *Standing To Sue in a SAPCR*, 1986 Advanced Family Law Course, at B–12.

We consider *Perez v. Williamson*, 726 S.W.2d 634 (Tex.App.—Houston [14th Dist.] 1987, no writ), distinguishable. There a couple took a child and kept it from its mother for three years. While living in Mississippi, the couple sued for adoption, but the Mississippi court awarded custody to the mother. Rather than obey the Mississippi order and return the boy, the couple held on to him and moved again. When the mother finally located her child, by then back in Texas, the state took possession of him, and the couple filed a petition for adoption or managing conservatorship.

The court of appeals stated that the couple "had not had possession of the child for 'at least six months *immediately* preceding the filing of the petition' since the child had been removed from their home prior to their filing suit." 726 S.W.2d at 636 (emphasis in original). But the court's holding seems to rest on the fact that the couple, "having had possession and control only in defiance of court orders prior to filing their petition, lacked standing to maintain a termination or conservatorship suit against [the child's mother]." *Id.* In other words, for purposes of standing under § 11.-03(a)(8), the six-month period of possession must be consensual and not in violation of a court order.

It would not serve the purposes of the statute to allow a brief, involuntary interruption in actual possession to destroy a putative father's standing to counterclaim for custody of a child whom all the world has considered for six years to be his own. If the three weeks' interruption in this case—which happened because Karen abruptly left home with the child—destroys Tommy's standing, we see no reason why three days' interruption by one party's unilateral act would not do the same thing. We cannot attribute such an intention to the legislature. *See Green v. State*, 773 S.W.2d 816, 818 (Tex.App.—San Antonio 1989, no pet.). We therefore hold that Tommy had had six months' actual possession of the child within the meaning of the statute at the time the original petition was filed, and that he has standing to maintain his claim for custody under TEX.FAM.CODE ANN. § 11.03(a)(8).

■ In his final point, Tommy argues that he equitably adopted the child, and that Karen should be estopped from questioning his right to be appointed as managing conservator. The trial court correctly rejected that argument because equitable adoption in Texas does not create the legal status of parent and child in these circumstances:

> The descriptive phrases, "equitable adoption," "adoption by estoppel," and "adoptive status," are used in decided cases strictly as a shorthand method of saying that because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child.

*Heien v. Crabtree,* 369 S.W.2d 28, 30 (Tex. 1963); *see also Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972, 973–74 (1951); *K.B. v. N.B.,* 811 S.W.2d 634, 639 (Tex. App.—San Antonio 1991, writ denied).

We are aware that our holding today does not put Tommy on equal footing with Karen *as a parent.* Family code § 14.-01(b)(1) mandates appointment of a parent as managing conservator unless it "would not be in the best interest of the child *because the appointment would significantly impair the child's physical health or emotional development.*" TEX.FAM. CODE ANN. § 14.01(b)(1) (Vernon Supp.1992) (emphasis added). But we cannot ignore the legislature's twofold decision (1) to define "parent" in biological terms, and (2) to require nonparents, including the psychological father, to prove that granting custody to the mother would significantly impair the child's health or emotional development, not merely that it would be in the child's best interest to live with him. If the statute did not include this provision, a stepfather or live-in boyfriend of six months might litigate custody against the mother on equal terms. Section 14.01(b)(1) properly puts an added burden on such a claimant.

But when there are *long-standing* ties between the child and a putative father, one might well question the wisdom of a standing rule that credits biological ties exclusively and minimizes real human relationships by allowing either spouse to deny paternity after many years have passed. There will be cases in which it would be in a child's best interest to live with the nonbiological psychological father, but the evidence does not establish that granting custody to the mother would "significantly impair the child's physical health or emotional development." In such cases § 14.-01(b)(1) may require the trial judge to ignore genuine, long-term relationships between a child and the only father it has ever known.

The statutory scheme puts a dangerous weapon in the legal arsenal of parents who are willing, during the stress of divorce litigation, to sacrifice a child's best interest for their own personal reasons. Section 12.06 enables the psychological *father* of many years who suspects spousal unfaithfulness to shirk his parental responsibilities, such as child support, by denying genetic paternity and proving it through blood tests. The statute also enables the unfaithful *mother* to challenge genetic paternity and thereby deprive the child of its psychological father if the tests show nonpaternity, unless he can establish a right to custody under § 14.01(b)(1) or visitation under § 11.03(c).[2]

A statute of limitations for the denial of paternity would solve many of these problems. Texas has not enacted a specific statute of limitations that limits a parent's ability to destroy a psychological father-child relationship by denying paternity. By its own terms, § 13.01's limitations period (two years after adulthood) applies only to suits to *establish* paternity. Before this provision was enacted, the courts applied the residual four-year statute of limitations to a mother's suit to establish paternity, the period being tolled during the child's minority because the suit was for his benefit. *See, e.g., Perry v. Merritte,* 643

---

2. Standing to seek *custody* is of course distinct from standing under § 11.03(c) to seek *visita-*  *tion,* as a "person deemed by the court to have had substantial past contact with the child."

S.W.2d 496 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Texas Dep't of Human Resources v. Delley*, 581 S.W.2d 519 (Tex.App.—Dallas 1979, writ ref'd n.r.e.); Tex.Civ.Prac. & Rem. Code 16.051 (Vernon 1986).

Whether the four-year statute applies to suits to *deny* paternity under § 12.06 has not been decided. We express no opinion about whether the residual four-year limitations period applies to Karen's effort to deny that Tommy is the child's father because that question is not preserved for review. Tommy's brief hints at a limitations defense by suggesting that Karen should be estopped from denying his parentage because she waited more than six years to do so. But that contention was not presented in the trial court and therefore we may not consider it. *See* Tex. R.App.P. 52(b).

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.