Opinion to: SJR TJ EVK ERA LCH JB GCH JS MM 













Opinion issued
September 23, 2010

 

 

 


 








 








            

                                                

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO.
01-09-00060-CV

____________

 

RODNEY SMITH, Appellant

 

V.

 

JILL NANETTE HAWKINS, Appellee

 

 



On Appeal from the 310th District Court

Harris County, Texas

Trial Court Cause No. 1998-28171








 

 



MEMORANDUM OPINION

          

          This
is an appeal from a final order arising from a suit to modify an order in a
suit affecting the parent-child relationship (“SAPCR”).  In two issues, appellant, Father, challenges
the provisions in the order requiring him to (1) pay child support in the
amount of $1,200.00 per month to appellee, Mother, and (2) pay appellee, Aunt,
$72,433.07 in attorney’s fees.  In a
third issue, Father challenges Aunt’s standing to
intervene in the SAPCR.  We affirm.

BACKGROUND

          M.H.
was born in 1996 to Father and Mother and was 12 years old at the time of trial.  M.H.’s grandmother (“Grandmother”) had cared
for M.H. since M.H. was two years old.  M.H.’s
Aunt maintained a household with Grandmother.

          Grandmother
was named managing conservator of M.H. in 1998. 
Father and Mother were named possessory conservators.  In 2001, Grandmother filed a suit to modify the
underlying SAPCR, and the trial court rendered an order again naming
Grandmother managing conservator of the child and Father and Mother possessory
conservators.

          In
2007, Father sought to modify the 2001 court order providing for
conservatorship of, and child support, for M.H. 
Grandmother filed an answer and counter-petition to modify, seeking an
increase in child support and attorney’s fees. 
Grandmother also requested that Father pay for M.H.’s health
insurance.  Aunt intervened, seeking to
be named a joint managing conservator with Grandmother, and requested
attorney’s fees.  On the issues of
managing and possessory conservatorship and visitation, the parties entered
into a mediated settlement agreement, the terms of which were incorporated into
the subsequent modification order.  On
the issue of conservatorship, Father and Mother were again appointed possessory
conservators of M.H., while Grandmother and Aunt were appointed joint managing
conservators of M.H. 

          On
the issues of child support and attorney’s fees, the parties proceeded to a
bench trial.  Father testified that he
was employed as a contractor and that his monthly net income was
$2,633.00.  He also testified that he had
received a personal injury settlement for injuries sustained in a pipeline
explosion, totaling approximately $900,000. 
Father stated that he had used the settlement proceeds to purchase a
home for himself and his parents, an automobile, and a boat.  He also stated that he had used the funds to
establish a college fund for M.H. in the amount of $20,700.00 and to pay back
child support in an amount of $26,000.00.

          The
trial court ordered Father to pay to appellees monthly child support in the
amount of $1,200.00, to pay Mother’s attorney’s fees in the amount of $7,000, and
to pay Aunt’s attorney’s fees in the amount of $72,433.07.  The trial court also entered the following findings
of fact and conclusions of law:

(1)            
[Aunt], intervenor, is the maternal aunt of the child and has
standing to intervene in this suit to modify the parent-child relationship.

 

(2)            
[Aunt] is a
person, other than a foster parent, who has had actual care, control, and
possession of the child for at least six months ending not more than 90 days
preceding the date of the filing of the intervention.

 

(3)            
The amount of net
resources available to [Father] per month include $2,633.00 income from his
business activities, the house that he bought his parents, vehicles, the
equipment he purchased in relation to his business (including a cargo vent
trailer, tools, and mower equipment), and all of his expenditures.

 

(4)            
[Father’s] assets
include a personal injury settlement in a net amount of $900,000.  In determining net resources available for
child support, and in accordance with Texas Family Code section 154.067, the
court assigned a reasonable amount of deemed income attributable to assets that
do not currently produce income.  The
court also considered whether certain property that is not producing income can
be liquidated without unreasonable financial sacrifice because of cyclical or
other market conditions.  The court also
assigned a reasonable amount of deemed income to income-producing assets that [Father]
may have voluntarily transferred.

 

(5)            
The amount of net
resources available to [Father] per month is $10,623.00.

 

(6)            
Monthly child
support paid by [Father] in the amount of $1,200.00 is in the best interest of
the child and is consistent with the ability of each party and the proven needs
of the child.

 

(7)            
The proven
reasonable financial needs of the child per month exceed $1,872.

 

(8)            
[Father] should
pay child support in the amount of $1,200.00 per month which is in the best
interest of the child and consistent with his ability to pay.

 

(9)            
Good cause exists
to award [Aunt] a judgment in the amount of $72,433.07 for attorney’s fees,
expenses, and costs, which were necessary as support for the child.

 

          Father
filed a motion to modify the trial court’s order and a motion for new trial on
November 19, 2008.  Father also filed a
motion to dismiss Aunt’s intervention.  The
trial court denied both of Father’s motions on January 13, 2009.

STANDING

          We
first address Father’s contention that Aunt lacked standing to intervene into
the suit affecting the parent-child relationship.

          A.      Standard of Review

          A
party seeking conservatorship of a child must have standing to seek such
relief.  In re SSJ-J,
153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.).  “Standing is implicit in the concept of
subject matter jurisdiction.”  Tex. Ass’n of Bus. v.
Tex. Air Control Bd.,  852 S.W.2d
440, 443 (Tex. 1993).  Because “[s]ubject matter jurisdiction is essential to the authority of
a court to decide a case,” a party’s lack of standing deprives the court of
subject matter jurisdiction and renders subsequent trial court action
void.  Id.; In re Smith,
260 S.W.3d 568, 572 (Tex. App. —Houston [14th Dist.] 2008, orig. proceeding).

          When
standing has been conferred by statute, the statute itself serves as the proper
framework for a standing analysis.  Smith,
260 S.W.3d at 572. 
In the context of a suit affecting the parent-child relationship,
standing is governed by the Texas Family Code, and “[t]he party seeking relief
must allege and establish standing within the parameters of the language used
in the statute.”  In
re H.G., 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, no pet.).  When standing has been sufficiently alleged
in the pleadings and the jurisdictional challenge attacks the existence of
jurisdictional facts, the trial court considers the evidence submitted by the
parties to resolve the jurisdictional issues raised.  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  The burden of proof on the issue of standing
is on the party asserting standing.  In re Pringle, 862 S.W.2d 722, 725 (Tex. App.—Tyler 1993, no
writ).  In a family law case, when
the petitioner is statutorily required to establish standing with “satisfactory
proof,” the evidentiary standard is a preponderance of the evidence.  In re A.M.S., 277
S.W.3d 92, 96 n.4 (Tex. App.—Texarkana 2009, no pet.); Von Behren v. Von Behren, 800
S.W.2d 919, 921 (Tex. App.—San Antonio 1990, writ denied).  The petitioner must show the facts
establishing standing existed at the time suit was filed in the trial
court.  M.D. Anderson Cancer Ctr. v.
Novak, 52 S.W.3d 704, 708 (Tex. 2001); In re Vogel, 261 S.W.3d 917,
921 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).  If the petitioner fails to meet his burden,
the trial court must dismiss the suit.  In re M.T.C., 299 S.W.3d 474, 479–480 (Tex. App.—Texarkana
2009, no pet.).

          A
party’s standing to seek relief is a question of law that we review de novo.  Tex. Dep’t of Transp. v.
City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004); In re Vogel,
261 S.W.3d at 920–21.  When
standing is challenged, the court of appeals in its de novo review must take as
true all evidence favorable to the challenged party and indulge every
reasonable inference and resolve any doubts in the challenged party’s
favor.  In re M.J.G., 248 S.W.3d 753, 758 (Tex.
App.—Fort Worth 2008, no pet.).

          B.      Governing Law

          Standing
to file a petition seeking conservatorship of a child is governed by sections
102.003 and 102.004 of the Texas Family Code. 
Section 156.002(b) provides that a person who has standing to sue under
Chapter 102 of the Family Code may file a suit for modification in the court
that has continuing jurisdiction.  Tex. Fam. Code Ann. § 156.002(b) (Vernon Supp. 2009).  Section 102.003 provides that “a person,
other than a foster parent, who has had actual care, control, and possession of
the child for at least six months ending not more than 90 days preceding the
date of the filing of the petition” may file an original suit at any time.  Id.
§ 102.003(a)(9) (Vernon Supp. 2009).

          The
purpose of section 102.003 is to provide standing for those who have developed
and maintained a relationship with a child over time.  In re Y.B., 300 S.W.3d 1, 4 (Tex. App.—San Antonio 2009, pet. denied); T.W.E.
v. K.M.E., 828 S.W.2d 806, 808 (Tex. App.—San Antonio 1992, no writ)
(examining former Family Code section 11.03(a)(8)).  Six months is, in the judgment of the Legislature,
the minimum time needed to develop a significant relationship for purposes of
standing to seek custody.  In re Garcia, 944 S.W.2d 725, 727 (Tex. App.—Amarillo 1997, no
writ.); T.W.E, 828 S.W.2d at 808. 
The requirement that the six months’ possession be within 90 days of
filing suit prevents persons who do not have a recent or current relationship
with the child from disrupting the child’s life with stale claims.  Garcia, 944 S.W.2d
at 727; T.W.E., 828 S.W.2d at 808.

          The
trial court’s findings of fact and conclusions of law as they pertain to the
issue of Aunt’s standing read as follows:

          J.H. is
a person, other than the foster parent, who has had actual care, control, and
possession of the child for at least 6 months ending not more than 90 days
preceding the date of the filing of the Intervention.

 

Father argues that, although the
testimony established Aunt’s continuing financial contributions to M.H., the
evidence was insufficient to prove that Aunt had actual care, control, and
possession of M.H. for at least six months ending not more than 90 days before
Aunt’s intervention into the suit.

          Grandmother
testified that she and Aunt joined households in 2000 and that Aunt used her
income to provide for M.H.  M.H.’s
principal residence had been with Grandmother and Aunt since 2000.  Aunt’s care, custody, control, and
possession, while not exclusive, had been consistent over a substantial period
of time.  Nothing in section 102.003(a)(9) requires that care, custody, control and possession be
exclusive.  See Tex. Fam. Code Ann.
102.003(a)(9); see
also In re M.P.B., 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.).  Grandmother stated that she and Aunt together
made the decision to seek joint managing conservatorship of M.H.  Grandmother testified that because of her
advanced age,[1]
she needed the assistance of Aunt in raising M.H. 

          Mother
also testified as to Aunt’s care, control, and possession of M.H.  She stated that Aunt had been a “wonderful
parent to our child” and that she had kept M.H. safe.

          Aunt
testified that she lived in the household with Grandmother and provides for
M.H.’s home by paying the mortgage for the house.  Aunt also told the court that she paid for
M.H’s health insurance.  Aunt further
stated that she helped raise M.H. and supported Grandmother, M.H., and
herself.  Finally, Aunt testified that
M.H. considered her a “mother” and that she was involved in M.H’s education and
bought all of M.H.’s clothes.

          After
reviewing the evidence presented at trial, we conclude that the trial court’s
findings of fact and conclusions of law are supported by a preponderance of the
evidence.  See Vogel, 261 S.W.3d at 921–22. 
The evidence establishes that Aunt has lived in the same household as
M.H. since 2000 and is a person, other than the foster parent, who has had actual
care, control, and possession of the child for at least 6 months ending not
more than 90 days preceding the date of the filing of the Intervention.  See In re M.P.B., 257 S.W.3d at 809 (noting
that care, control, and possession was not exclusive, but finding sufficient
evidence of grandmother’s standing when mother had consented to grandmother’s
provision of home and care for child.).

          Father’s
issue that the trial court erred in finding that Aunt had standing to intervene
in this suit is overruled.

MODIFICATION
OF CHILD SUPPORT ORDER

          We now turn to Father’s contentions
that (1) the trial court
abused its discretion in ordering him to pay $1,200 per month in child support
to Aunt and Grandmother and (2) there is insufficient evidence to support the
trial court’s order.

          A.      Standard of Review  

          Because
the sufficiency of the evidence and abuse-of-discretion standards of review
often overlap in family law cases, appellate courts employ a hybrid
analysis.  Stamper
v. Knox, 254 S.W.3d 537, 542 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).  Within this overarching standard, we engage
in a two-pronged inquiry to determine whether the trial court (1) had
sufficient information on which to exercise its discretion and (2) erred in exercising
its discretion.  Id. Zeifman v. Michels,
212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).  The traditional sufficiency review comes into
play with regard to the first question, and those standards are discussed
infra.  Id.  With regard to the second question, we determine
whether, based on the elicited evidence, the trial court made a reasonable
decision.  Id.  Stated inversely, the appellate court must
conclude that the trial court’s decision was neither arbitrary nor
unreasonable.  See id.  Thus, we resolve the second question by
determining whether the trial court’s findings constitute an abuse of
discretion.

          The
test for abuse of discretion is whether the trial court acted in an arbitrary
and unreasonable manner or whether it acted without reference to any guiding
principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  The fact that a trial court may decide a
matter within its discretionary authority in a different manner from an
appellate court in a similar circumstance does not demonstrate an abuse of
discretion.  Id.
at 241–42.  Thus, an abuse of
discretion does not occur as long as some evidence of a substantive and
probative character exists to support the trial court’s decision.  Id.

          B.      Governing Law

          Modification
of a child-support obligation is proper upon a showing that the circumstances
of the child or a person affected by the order have materially and
substantially changed since the order was signed.  Tex. Fam. Code Ann. § 156.401(a)
(Vernon 2008); In re S.B.C., 952 S.W.2d 15, 17 (Tex. App.—San Antonio
1997, no pet.).  In
a modification proceeding, the trial court compares the financial circumstances
of the child and the affected parties at the time that the support order was
entered with their circumstances at the time that modification is sought.  In re S.B.C., 952
S.W.2d at 17.

          Under
the Texas Family Code, net resources for calculating child support include all
wage and salary income and other compensation for personal services, including
commissions, overtime pay, tips, bonuses, and all other income actually being
received, including gifts and prizes.  Tex. Fam. Code Ann. § 154.062(a), (b)(1), (5) (Vernon 2009). 
When appropriate, in order to determine the net resources that are
available for child support, the trial court may assign a reasonable amount of
deemed income attributable to assets that do not currently produce income.  Id. § 154.067(a) (Vernon 2008).  In addition, courts must also consider
“whether certain property that is not producing income can be liquidated without
an unreasonable financial sacrifice . . . .” 
Id.  Further, the trial
court may “assign a reasonable amount of deemed income to income-producing
assets that a party has voluntarily transferred or on which earnings have
intentionally been reduced.”  Id. § 154.067(b) (Vernon
2008).  The trial court may also
order child support that varies from the Family Code’s child support guidelines
and consider evidence of all relevant factors including “any financial
resources available for the support of the child.”  Id.
§ 154.123(b)(3) (Vernon 2008).

          C.      Application

          As
an initial matter, Father asserts that because Aunt did not plead for child
support in her petition in intervention, the trial court erred in entering this
portion of its order.  However, in her petition
in intervention, Aunt sought to be appointed as “joint managing conservator
with [Grandmother], with all the rights and duties of a joint managing
conservator.”  Grandmother pleaded for
modification of child support.  By virtue
of Grandmother’s request for modification of child support, and of Aunt’s request
for appointment with Grandmother as joint managing conservator, Aunt sought
child support, as well.  

          Grandmother
testified that in 1999, both Father and Mother were ordered to pay $150.00 per
month in child support.  Grandmother also
stated that Aunt had been “footing all the bills” since they joined households
and that her income could not support M.H.’s needs.

          Aunt
testified as to her expenses for the care of M.H.  Aunt introduced a document outlining all
expenses directly attributable to M.H. 
Aunt testified that she was seeking $1,500.00 per month in child support
from Father and that the average monthly expenses relating to M.H. were
$1,872.00, which did not include housing, utilities, or transportation.

          Father
testified that his current monthly net income from his employment was $2,633.00
per month.  Father also testified that he
had received a personal injury settlement award of $1,500,000.00, minus
attorney’s fees.  Father went on to testify
that he had purchased a home, vehicle, and boat with the settlement award, as
well as a home for his parents.  Father
also testified that he had purchased various equipment items for his new
contracting business.

          The
trial court’s findings of fact and conclusions of law recited:

(1)            
The amount of net
resources available to [Father] per month include $2,633.00 income from his
business activities, the house that he bought his parents, vehicles, the
equipment he purchased in relation to his business (including a cargo vent
trailer, tools, and mower equipment), and all of his expenditures.

 

(2)    The
proven financial needs of the child per month exceed $1,872.00.

 

(3)    Monthly
child support paid by [Father] in the amount of $1,200.00 is in the best
interest of the child and is consistent with R.S.’s ability to pay and the
proven needs of the child.

 

(4)   [Father]
should pay child support in the amount of $1,200.00 per month.

 

          The
trial court’s findings of fact and conclusions of law indicated that the court
took into account the personal injury settlement that Father was awarded in
determining the net resources available for child support in accordance with
Texas Family Code section 154.067.

          After
reviewing the evidence presented at trial and the trial court’s findings of
fact and conclusions of law, we conclude that the record contains both
probative and substantive evidence to support the trial court’s determination
that the parties’ circumstances had materially and substantially changed so as
to warrant an increase in Father’s child support obligation.  Moreover, the record contains both probative
and substantive evidence to support the trial court’s award of $1,200 per
month.  See Goodson v. Castellanos, 214 S.W.3d 741, 757 (Tex. App.—Austin
2007, pet. denied) (holding that trial court could consider assets from home
and business in addition to earnings when making child support determination).  Because there is some probative and
substantive evidence to support the trial court’s determinations, we cannot say
that the trial court acted arbitrarily or unreasonably when it increased Father’s
child support obligation from $150.00 to $1,200.00.  

          Father’s
issue relating to the modification of child support is overruled.

ATTORNEY’S
FEES

          Finally,
we address Father’s issue that the evidence is insufficient to support the
award of $72,433.07 in attorney’s fees to Aunt. 


          A.      Standard of Review  

          We
again engage in the two-pronged inquiry to determine whether the trial court
(1) had sufficient information on which to exercise its discretion and (2)
erred in exercising that discretion.  See Zeifman, 212 S.W.3d at 588.  

          B.      Governing Law

          The
Family Code allows the trial court to award attorneys’ fees in suits affecting
the parent-child relationship.  Tex. Fam. Code Ann. § 106.002 (Vernon 2008).  There are several factors that a trial court
should consider in determining the amount of reasonable attorneys’ fees to
award.  Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997); Hays
& Martin, L.L.P. v. Ubinas-Brache, 192
S.W.3d 631, 636 (Tex. App.—Dallas 2006, no pet.).  These factors include the time, labor, and
skill required to perform the legal service properly; the novelty and
difficulty of the questions involved; the customary fees charged in the local
legal community for similar legal services; the amount involved and the results
obtained; the nature and length of the professional relationship with the
client; and the experience, reputation, and ability of the lawyer performing
the services.  Arthur Andersen &
Co., 945 S.W.2d at 818.  However, a trial court is not required to
receive evidence on each of these factors. 
Burnside Air Conditioning & Heating, Inc. v.
T.S. Young Corp., 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet.).  Rather, the court can also look at the entire
record, the evidence presented on reasonableness, the amount in controversy,
the common knowledge of the participants as lawyers and judges, and the
relative success of the parties.  Id. at 897. 
Testimony from a party’s attorney about that party’s attorney’s fees is
taken as true as a matter of law if the testimony “is not contradicted by any
other witness and is clear, positive, direct, and free from
contradiction.”  Blockbuster, Inc. v.
C-Span Entm’t, Inc., 276 S.W.3d 482, 490 (Tex.
App.—Dallas 2008, pet. granted, judgm’t vacated w.r.m.) (citing Ragsdale v. Progressive Voters League, 801
S.W.2d 880, 882 (Tex. 1990)).  This is
especially true when the opposing party had the means and opportunity to
disprove the testimony, but failed to do so. 
Id.

 

          C.      Application

          Father
argues that Aunt’s counsel “did not segregate his services and charges to
distinguish between fees charged for issues for which agreements were reached
at mediation, and those issues for which trial was undertaken and upon which
his client prevailed.”  Father further
argues that Aunt has not established that the attorney’s fees were rendered on
behalf of her.

          Aunt’s
petition in intervention alleged that she had to hire a lawyer in connection
with this suit and requested that Father be ordered to pay reasonable
attorneys’ fees and expenses through trial and appeal.  Aunt’s attorney, Stewart Gagnon, provided the
court with an invoice outlining all expenses that Aunt had incurred during the
course of his representation of her and stated that the fees that Aunt had
accrued as of the day before his testimony totaled $63,790.28.  Gagnon testified that all of the work done in
his representation of Aunt was reasonable and necessary to represent Aunt in
this case.  Gagnon also testified that
the fees were customary in Harris County for cases such as this and for
representation by attorneys with his background and experience.  In response, Father did not submit any controverting evidence about Aunt’s attorneys’ fees.

          After
reviewing the evidence presented and the trial court’s findings of fact and
conclusions of law, we conclude that the record contains both probative and
substantive evidence to support the trial court’s award of attorneys’ fees to
Aunt in the amount of $72,433.07. Aunt’s request for attorneys’ fees in the
prayer of her petition in intervention was sufficient to authorize an award of
attorneys’ fees to her.  See Tull v. Tull, 159 S.W.3d 758, 762
(Tex. App.—Dallas 2005, no pet.). 
Moreover, the trial court did not abuse its discretion in not requiring
Aunt to segregate the attorney’s fees incurred between the issues that the
parties resolved in mediation and those that were tried.  See In re T.M.K., No. 04-02-00673-CV,
2003 WL 21747637, at *3 (Tex. App.—San Antonio, July 30, 2003, pet. denied) (mem.
op. not designated for publication); see also Carswell
v. Cloud, No. 03-03-00117-CV, 2003 WL 22348842, at *5 (Tex. App.—Austin,
Oct. 16, 2003, pet. denied) (mem. op. not designated for publication) (holding that
attorney’s fees are not limited when parties settle some issues and present
remaining issues to trial court to decide).  
Father does not contend that Aunt sought fees for specific claims that
do not allow for them.  Cf.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299,
314 (Tex. 2006).  

          Father’s
issue relating to trial court’s award of attorneys’ fees to Aunt is overruled.




CONCLUSION

          We
affirm the order of the trial court.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice

                                                                   

 

Panel consists of Chief Justice Radack, and Justices
Bland and Sharp.

 

 











[1]               Grandmother
was 83 years old.