

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00543-CV

_____

In re P.R.

---

Original Proceeding
481st District Court of Denton County, Texas
Trial Court No. 23-11660-481

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Relator P.R. (Father)[1] filed a petition for writ of mandamus seeking relief from a trial court's refusal to dismiss a nonparent-conservatorship counterclaim (SAPCR) in a pending divorce. Because the undisputed jurisdictional facts show that the nonparent, E.S. (Stepmother), did not have standing to bring the SAPCR when she filed it, we grant the relief requested in Father's petition and order the trial court to dismiss the SAPCR.

### Brief Background

Father's daughter, Ingrid, was born while Father was married to her mother,[2] but Ingrid's mother died three months after her birth. Six months later, Father married Stepmother. Father and Stepmother lived together, with Ingrid, from March 2019[3] until December 2023, when they separated and Stepmother moved out of the residence.

Father filed for a divorce that same month; his petition alleges, "There are no children born or adopted of this marriage, and no child is expected." In February

---

[1]In this memorandum opinion, we do not refer to the parties and child by their actual names. *See* Tex. Fam. Code Ann. § 109.002(d).

[2]Although Ingrid was conceived via IVF, it is undisputed that she was born while Father was married to Ingrid's biological mother. *See* Tex. Fam. Code Ann. §§ 101.024(a), 160.102(13), 160.204(a)(1) (defining a presumed father).

[3]From June 2018 until March 2019, Ingrid lived with Stepmother in her apartment in Texas while Father was in New York wrapping up a medical practice.

2024, Stepmother filed a counterpetition for divorce that made the same allegation regarding children. Neither party's petitions mention Ingrid.

In September 2024, Stepmother filed her first petition, entitled "Counterpetitioner's First Supplemental Counterpetition for Divorce," in which she sought joint managing conservatorship of Ingrid and alleged standing as a stepparent according to Family Code Section 102.003(a)(9). Father sought to dismiss the SAPCR for lack of standing, arguing in part that Stepmother could not establish standing according to Section 102.003(a)(9).[4]

The trial court held a hearing on Father's plea, at which he and Stepmother testified. The undisputed evidence shows that, during the marriage and before the separation, Stepmother lived with Father and Ingrid and provided actual care, control, and possession of Ingrid; according to Stepmother, she acted in "[t]he role of a mother" and did "everything" for Ingrid.[5] It is also undisputed that Stepmother continued to do so until late December 2023, when she and Father separated and

---

[4]Stepmother later amended her petition to allege standing under Section 102.003(a)(11). But the trial court did not find that Stepmother had standing under that section. Furthermore, it is inapplicable because Father is not deceased. *See* Tex. Fam. Code Ann. § 102.003(a)(11); *In re D.D.L.*, No. 13-22-00062-CV, 2022 WL 3652496, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, no pet.) (mem. op.).

[5]For example, school staff and medical providers referred to Stepmother as Ingrid's mother, and Ingrid called her mommy.

Father obtained a short-term protective order against Stepmother. After that, Stepmother did not see Ingrid for over a month.

Beginning February 6, 2024, Stepmother "resume[d her] same role in [Ingrid's] life," with "[t]he only difference [being they] weren't living under the same roof." Although not living with Ingrid and Father during that time, Stepmother took Ingrid to school, made and took her to medical appointments, and took care of her in her home with Father's permission. Initially, Father allowed Ingrid to stay with Stepmother overnight "multiple times per week and month," but on June 17, 2024, Father removed Ingrid from Stepmother's apartment, and their overnight visits ceased.

Based on this evidence, the trial court determined that Stepmother had standing to bring the SAPCR under Section 102.003(a)(9) and denied the plea to the jurisdiction. The trial court also entered temporary orders appointing Father and Stepmother Ingrid's joint managing conservators, restricting Ingrid's primary residence to Denton County, and setting forth terms of possession. Father filed a motion to reconsider, which the trial court denied after a hearing. Father then filed this petition for mandamus relief. We stayed the trial court proceedings, but left the temporary orders in effect, pending our resolution of the merits.

**Standard of Review**

Standing, which is a component of subject-matter jurisdiction, is a threshold issue in a custody proceeding. *In re K.D.H.*, 426 S.W.3d 879, 882 (Tex. App.—

4

Houston [14th Dist.] 2014, no pet.). Whether a party has standing to sue is a question of law that we review de novo. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). If a petitioner lacks standing to assert a claim, the trial court must dismiss that claim for lack of jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 153 (Tex. 2012); *In re H.L.*, 613 S.W.3d 722, 724 (Tex. App.—Fort Worth 2020, no pet.). Court action in the absence of subject-matter jurisdiction is void. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]).

When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Thus, a party seeking relief in a suit affecting the parent–child relationship must allege and establish standing within the parameters of the language used in the relevant Family Code provisions. *H.L.*, 613 S.W.3d at 724. Because standing is implicit in the concept of subject matter jurisdiction, it is never presumed and cannot be conferred by waiver or estoppel. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied) (op. on reh'g).

Mandamus relief is permissible when a trial court erroneously denies a motion to dismiss a suit affecting the parent–child relationship for lack of standing. *In re A.G.*, No. 02-24-00548-CV, 2025 WL 294159, at *2–3 (Tex. App.—Fort Worth Jan. 24, 2025, orig. proceeding) (mem. op.); *In re Clay*, No. 02-18-00404-CV, 2019 WL 545722, at *3 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding [mand.

denied]) (mem. op.). Thus, we must determine whether the trial court clearly misapplied the law regarding standing in denying Father's plea to the jurisdiction. *See Clay*, 2019 WL 545722, at *3.

To analyze whether a party has standing, we begin with the petitioner's live pleadings, which we construe in the petitioner's favor. *See Jasek v. Tex. Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 527 (Tex. App.—Austin 2011, no pet.). When the movant also challenges the existence of jurisdictional facts, the trial court must consider evidence submitted by the parties when necessary to resolve the jurisdictional issue. *In re M.P.*, No. 13-21-00013-CV, 2022 WL 1572267, at *3 (Tex. App.—Corpus Christi–Edinburg May 19, 2022, no pet.) (mem. op.) (citing *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). If the facts relevant to jurisdiction are undisputed, the jurisdictional determination is made as a matter of law. *See Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

## Stepmother Does Not Have Standing

The version of Family Code Section 102.003(a)(9) applicable to this case provides that "[a]n original suit may be filed at any time by . . . a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."[6] According to the Texas Supreme Court's construction of Section

---

[6]This section was amended effective September 1, 2025, but the prior version applies to this case. *See* Act of May 21, 2025, H.B. 2350, 89th Leg., R.S., ch. 402, § 1.

102.003(b), which explains how to calculate the requisite time of "actual care, control, and possession" of the child, a nonparent must, during that six-month period, have served in a parent-like role by "(1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children." *H.S.*, 550 S.W.3d at 160. Although the evidence here shows that Stepmother met all of these requirements for 90 days after she and Father separated, she had not shared a principal residence with Ingrid within no more than 90 days before she first filed her pleading that included the SAPCR. Therefore, Father argues that Stepmother did not establish standing under Section 102.003(a)(9).

Stepmother acknowledges that at the time she first filed the SAPCR, she had not shared a principal residence with Ingrid within no more than 90 days before the SAPCR's filing.[7] But she counters that the relation-back doctrine should apply so that

---

[7] Stepmother contends that because her pleadings sufficiently alleged standing under Section 102.003(a)(9), Father first had to prove by a preponderance of the evidence "the non-existence of a fact necessary for [her] to establish standing" and that he failed to do so; thus, she bore no burden to produce evidence of her actual care, control, and possession of Ingrid. Father's plea to the jurisdiction challenged the existence of facts establishing standing under Section 102.003(a)(9). At the hearing, Father testified that Stepmother was not currently residing with him and Ingrid and that she had moved in with her parents after, in his attorney's words, they "split." Thereafter, he paid for her apartment "until the end of December." By the time of the hearing, both parties had alleged that they had ceased to live together as spouses "on or about December 6, 2023." Thus, Father presented evidence that, as of the date Stepmother filed the SAPCR, the parties had not lived together since December 6, 2023, and were still not living together. This was sufficient to meet any burden he had to produce evidence challenging Mother's standing under Section 102.003(a)(9)

7

her standing to file the SAPCR should be measured from February 20, 2024, the date she filed her original counterpetition for divorce. Stepmother testified at the hearing that she would have filed the SAPCR earlier, but her then-attorney told her that she could not have any rights to Ingrid.

The relation-back doctrine provides,

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code Ann. § 16.068; *see* Tex. Fam. Code Ann. § 105.003(a) ("Except as otherwise provided by this title, proceedings shall be as in civil cases generally."). According to Stepmother, because she presented evidence that the purpose of her marriage to Father was to fulfill Ingrid's need for a mother and because her acting in that role will affect the trial court's just-and-right equitable division of the couple's marital estate, the SAPCR did not raise a claim "wholly new, distinct, or different" from the divorce.

---

and to allow the trial court to determine the question based on evidence. *Cf. City of Austin v. Powell*, 704 S.W.3d 437, 446 (Tex. 2024) (noting that a plea to the jurisdiction in the immunity context can function either like a no-evidence summary-judgment motion—with no concomitant need to accompany it with evidence—or like a traditional summary-judgment motion—with supporting evidence attached); *Slant Operating, LLC v. Octane Energy Operating, LLC*, 717 S.W.3d 409, 415 (Tex. Bus. Ct. 2025, order) (applying same principle from *Powell* to a non-immunity-based plea to the jurisdiction challenging business court's subject-matter jurisdiction).

Assuming that the relation-back doctrine could apply to Family Code standing issues,[8] the plain language of Family Code Section 102.003(a) defeats Stepmother's argument here. Section 102.003(a) confers standing on certain persons to file "[a]n original suit." Tex. Fam. Code Ann. § 102.003(a). Although Section 102.003(a)(9) itself refers to the date of filing of a "petition" as the benchmark for measuring the 90-day window, Section 102.003(b) expressly provides that in calculating the time for establishing (a)(9) standing, the trial court "shall consider the child's principal residence during the relevant time preceding the date of commencement of the *suit*." *Id.* § 102.003(b) (emphasis added).

Family Code Section 101.031 defines a "suit" as "a legal action under *this* title." *Id.* § 101.031 (emphasis added); *see also id.* § 102.002 ("An original suit begins by the filing of a petition as provided by this chapter."), § 102.008 (listing required contents of Title 5 "petition"). Section 101.031 is included in Title 5, but divorces are governed by Title 1. Therefore, absent the application of some other statute providing that a suit affecting the parent–child relationship brought by a nonparent is not new, distinct, or different from a divorce between the parent and nonparent, the

---

[8] *See In re D.A.A.-B.*, 657 S.W.3d 549, 576–77 (Tex. App.—El Paso 2022, no pet.) (Palafox, J., concurring) (opining that 90-day window of Section 102.003(a)(9) related to date of initial divorce filing in same-sex marriage and that relation-back doctrine should apply to subsequent SAPCR filed outside 90-day window).

9

SAPCR is a new and different claim from the divorce,[9] regardless of whether the marriage was solely for the child's benefit. *Cf. Bowers v. Bowers*, 510 S.W.3d 571, 583 (Tex. App.—El Paso 2016, no pet.) (holding that bill of review proceeding was not a Title 1 suit for dissolution of marriage and, thus, trial court did not have authority to issue Section 6.709 temporary orders). *But cf. In re B.T.G.*, 494 S.W.3d 839, 841–42 (Tex. App.—Dallas 2016, no pet.) (op. on reh'g) (relying on Family Code Section 6.406, which provides that if parties to a divorce are "*parents* of a child, . . . and the child is not under the continuing jurisdiction of another court . . . , the suit for dissolution of a marriage must include a suit affecting the parent–child relationship under Title 5" (emphasis added)).[10]

Stepmother contends that equitable concerns compel the application of the relation-back doctrine here, considering that "technical rules of practice and pleadings are of little importance in determining issues of custody of children." *In re A.M.S.*, No. 05-24-00862-CV, 2025 WL 1458308, at *3 (Tex. App.—Dallas May 21, 2025, no

---

[9]Stepmother argues that this conclusion ignores that the test for whether a pleading relates back to a previously filed pleading "is not whether the claims contained within the pleadings are, or can be brought as, separate or distinct lawsuits, but rather whether or not the **facts** that give rise to the different claims are based on a wholly new, different, or distinct transaction or occurrence." But regardless of whether that is the proper test to apply, we must follow the plain language of the relevant Family Code sections, particularly Section 102.003(b), in determining whether the relation-back doctrine can apply.

[10]The Family Code includes "mother" in the definition of "parent," and it also establishes a mechanism for determining maternity. Tex. Fam. Code Ann. §§ 101.024(a), 160.106.

pet.) (mem. op.) (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)). First, according to Stepmother, she "falls squarely within the category of nonparents the Legislature intended to create standing for"; therefore, dismissal of the SAPCR would create an absurd result. And, second, she produced evidence that she would have filed the SAPCR within 90 days of having shared a principal residence with Ingrid, but for her then-counsel's erroneous advice.

"The purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a relationship with a child over time." *In re Brice*, 648 S.W.3d 293, 296 (Tex. App.—San Antonio 2019, orig. proceeding). Although this is Section 102.003(a)(9)'s purpose, to have standing under that section, a person with that type of relationship with a child must still prove it exists at the time of filing suit; the fact that it existed at one time before the 90-day window for filing suit is not enough. *See Coons-Anderson v. Anderson*, 104 S.W.3d 630, 632–36 (Tex. App.—Dallas 2003, no pet.). "The requirement that the six months' possession be within ninety days of filing suit prevents persons who do not have a recent or current relationship with the child from disrupting the child's life with stale claims." *Id.* at 636.

Stepmother contends that she falls "into a very narrow class of people not specifically addressed by the Family Code – the only mother a child has ever known," and that, "[g]iven the bond between" her and Ingrid, "it is difficult to imagine that [her] pursuit of involvement in [Ingrid's] life would ever be considered a 'stale claim.'" Father does not dispute the evidence that, for the first six years of Ingrid's life,

11

Stepmother fulfilled the role of Ingrid's mother and that Ingrid has known no other mother. But absent a showing of standing within the Family Code's parameters—which is lacking here—whether the strength of Stepmother's relationship with Ingrid justifies conservatorship or possession is, according to constitutional principles, solely a decision for Father. *See Troxel v. Granville*, 530 U.S. 57, 68–70, 120 S. Ct. 2054, 2061–62 (2000); *In re C.J.C.*, 603 S.W.3d 804, 820 (Tex. 2020) (orig. proceeding). Thus, the courts are constrained to defer to that decision and may not substitute our own opinion of Ingrid's best interest for Father's, regardless of the clear evidence here of the strong and unique bond between Ingrid and Stepmother. *See C.J.C.*, 603 S.W.3d at 820 ("When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request."); *see also H.S.*, 660 S.W.3d at 162 ("The nonparent standing threshold in Texas is thus much higher and narrower than the one rejected in *Troxel*."). *Contrast Jones v. Fowler*, 969 S.W.2d 429, 430, 433 (Tex. 1998) (cautioning that former version of Section 102.003(a)(9)—which did not contain 90-day window—should not be interpreted as "mechanistic in application," but nevertheless determining that mother's former partner—who had lived together with mother and child as family for first two years of child's life and who had been allowed short periods of access and possession of child for six months after parties ceased living together—did not have standing to file custody suit because she did not have the required care, custody, and possession of

12

the child for six continuous months "immediately preceding" the suit's filing), *with T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex. App.—San Antonio 1992, no writ) (holding that putative father showed actual possession and control for requisite 6 months, despite 3-week delay in filing custody suit after mother left home with child, because "[i]t would not serve the purposes of the statute to allow a brief, involuntary interruption in actual possession to destroy a putative father's standing to counterclaim for custody of a child whom all the world has considered for six years to be his own"), *cited with approval in Jones*, 929 S.W.2d at 433.

Stepmother also contends that, on these facts, application of Section 102.003(a)(9)'s 90-day requirement "does not effectuate justice" because it fails to recognize her particular, long-term bond with Ingrid and thus creates an absurd result. But application of the plain language of Section 102.003(a)(9)—in particular the 90-day requirement—here does not lead to an absurd result legally;[11] instead, it preserves

---

[11]A legal result is not absurd simply because it is unfair in a particular situation. *See Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 795 (Tex. 2024) (noting that courts do not decide whether particular laws are wise or could be better worded to achieve more equitable results and that the absurdity construction exception "is reserved for truly exceptional cases" that are "unthinkable or unfathomable" (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)). Here, absent a showing of standing in conformance with the plain language of Section 102.003, a court has no authority to override the Legislature's plain language and Father's determination of Ingrid's best interest—even if the court believes that Father's withholding possession and access to Stepmother is not in Ingrid's best interest. *Cf. In re Lee*, 411 S.W.3d 445, 458–61 (Tex. 2013) (orig. proceeding) (holding that trial court abused its discretion by refusing to enter judgment in accordance with a mediated settlement agreement that was binding according to the Family Code after determining that it was not in the child's best interest).

(1) the Texas Legislature's intent that the nature of the care, control, and possession remain current—consistent with constitutional principles—and (2) the law's presumption that a fit parent has the right to decide whether and to what extent to allow a nonparent access to his child. *See, e.g.*, *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061 (2000); *C.J.C.*, 603 S.W.3d at 820; *In re N.H.*, 652 S.W.3d 488, 496 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); *In re C.A.M.M.*, 243 S.W.3d 211, 224 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (Frost, J., concurring) (noting that, "[c]onsistent with the constitutional rights of fit parents, the Texas Legislature, for the most part, gives fit parents priority over non-parents in matters relating to the parents' children"). Moreover, at the time of the initial hearing, Father had not restricted all of Stepmother's access to Ingrid; Stepmother testified, "Still I see her," and explained that she would see Ingrid at school and church. *See Troxel*, 530 U.S. at 71, 120 S. Ct. at 2062–63 (noting that grandparents had not alleged that parent sought to cut off their contact entirely and that parent had not opposed visitation but rather had asked for visits of a shorter duration than what the grandparents had wanted).

For the same reason, we see no basis on which we can apply the relation-back doctrine equitably (when the plain language of Section 102.003(a)(9) precludes it) because Stepmother relied on mistaken advice from her then-attorney in failing to file the SAPCR timely. Stepmother cites no authority in support of her contention and has raised no potential constitutional violation, including due process. *Cf. In re J.O.A.*, 283 S.W.3d 336, 339–47 (Tex. 2009) (concluding that, in parental-rights termination

case, ineffective assistance of counsel by failing to file a statement of points under former Family Code Section 263.405(i) violated parent's due-process right and entitled parent to a review of matters not included in statement of points); *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003) (holding that, in parental-rights termination case, counsel's ineffective assistance by failing to preserve factual-sufficiency argument "raise[d] the risk of erroneous deprivation [of rights] too high" and entitled the parent to such a review).

Accordingly, we hold that the trial court abused its discretion by determining that Stepmother had Section 102.003(a)(9) standing to file the SAPCR and by denying Father's plea to the jurisdiction.

## Conclusion

We sustain the first issue in Father's mandamus petition.[12] Because the trial court abused its discretion by determining that Stepmother had standing to bring the SAPCR according to Family Code Section 102.003(a)(9), we conditionally grant mandamus relief. We lift our previously ordered stay and direct the trial court to (1) vacate its order denying Father's plea to the jurisdiction, (2) grant the plea, and (3) dismiss the entire SAPCR, including the temporary orders. We are confident that the trial court will comply with our order; the writ will issue only if it does not.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: December 11, 2025

---

[12]We need not address Father's second issue, which pertains to the propriety of the temporary orders independent from standing. *See Reyes v. Lott*, No. 14-20-00105-CV, 2022 WL 248122, at \*6 (Tex. App.—Houston [14th Dist.] Jan. 27, 2022, no pet.) (mem. op.).