300 S.W.3d 1 (2009)
In the Interest of Y.B., K.B., and T.B., Children.
No. 04-08-00507-CV.
Court of Appeals of Texas, San Antonio.
May 20, 2009.
Rehearing En Banc Denied October 7, 2009.
*3 Jeffrey J. Jowers, Clemens & Spencer, P.C., Michael S. Moore, San Antonio, TX, for Appellant.
Beth Watkins Squires, Law Office of Beth Squires, Michael W. Jackson, Jackson Law Firm, San Antonio, TX, for Appellee.
Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, MARIALYN BARNARD, Justice.

OPINION

OPINION ON APPELLEE'S MOTION FOR REHEARING
Opinion by: PHYLIS J. SPEEDLIN, Justice.
The motion for rehearing filed by appellee Tina Bruno is denied. This court's opinion and judgment dated March 18, 2009, are withdrawn, and this opinion and judgment are substituted.
David Swift appeals the trial court's determination that he has no standing under section 102.003(a)(9) to bring a SAPCR seeking managing conservatorship. See TEX. FAM. CODE ANN. § 102.003(a)(9) (Vernon 2008). Because a disputed fact issue exists as to whether Swift met the statute's six-month requirement, the trial court erred in granting the plea to the jurisdiction. Accordingly, we reverse the judgment of the trial court and remand the cause to the trial court for further proceedings.

BACKGROUND
Swift and Tina Bruno have known each other for over ten years. In December of 2004, Bruno traveled to the Ukraine to adopt three girls. Bruno is the girls' only legal parent. On April 22, 2007, Swift and Bruno married. On January 21, 2008, Swift moved out of Bruno's house. He filed a suit affecting the parent-child relationship ("SAPCR") on March 10, 2008. A week later, Bruno filed a plea to the jurisdiction and motion to dismiss, challenging Swift's standing to bring a SAPCR; a hearing was held the same day. Conflicting testimony was presented regarding whether Swift met the requisite amount of time required to establish standing under the Family Code. The trial court granted Bruno's plea to the jurisdiction and motion to dismiss, and awarded Bruno $4,000 in attorney's fees. In its findings of fact and conclusions of law, the trial court found that Swift did not have actual care, control, and possession of the children for at least six months. The trial court concluded that Swift lacked standing under section 102.003(a)(9) of the Family Code to bring a SAPCR. Swift now appeals.

*4 STANDARD OF REVIEW
The question of who has standing to bring an original suit affecting the parent-child relationship seeking managing conservatorship is a threshold issue. In re SSJ-J, 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.). Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex.1993). Whether a court has subject matter jurisdiction is a question of law. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the burden to allege facts demonstrating jurisdiction and we construe the pleadings liberally in its favor. Id. When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court reviews the relevant evidence to determine whether a fact issue exists. See id. at 227. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea and the issue must be resolved by the trier of fact. Id. at 227-28. If the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. Id. at 228. We review the trial court's ruling de novo. Id. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference in its favor. Id. When the trial court makes and files findings of fact and conclusions of law, as in this case, we review the trial court's findings under the sufficiency of the evidence standard, and the trial court's conclusions of law are reviewed de novo. Lonza AG v. Blum, 70 S.W.3d 184, 189 (Tex.App.-San Antonio 2001, pet. denied).

DISCUSSION
In his pleadings, Swift alleged that he had standing to bring suit pursuant to section 102.003(a)(9) of the Texas Family Code. See TEX. FAM. CODE ANN. § 102.003(a)(9) (Vernon 2008). Section 102.003(a)(9) provides that, "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file an original suit requesting managing conservatorship. Id. In computing the time necessary for standing under subsection (a)(9), "the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." Id. § 102.003(b) (Vernon 2008). The purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a relationship with a child over time. T.W.E. v. K.M.E., 828 S.W.2d 806, 808 (Tex.App.-San Antonio 1992, no writ) (examining former Family Code section 11.03(a)(8)); Coons-Andersen v. Andersen, 104 S.W.3d 630, 636 (Tex.App.-Dallas 2003, no pet.). A determination of standing under this section is necessarily fact specific and resolved on an ad hoc basis. In re M.P.B., 257 S.W.3d 804, 809 (Tex.App.-Dallas 2008, no pet.) (citing Doncer v. Dickerson, 81 S.W.3d 349, 362 (Tex.App.-El Paso 2002, no pet.)). "[S]tanding does not mean the right to win; it is only the right to be heard." In re SSJ-J, 153 S.W.3d at 138.
At the hearing on the plea to the jurisdiction, Bruno testified that Swift did not immediately move in with her and the children after they were married in April 2007, but waited until August 24, 2007. From April to August, Swift would stay at his home during the week and spend Friday and Saturday nights at her home with her and the girls; it was easier for Swift to stay at his house during the week because it was closer to his office. Prior to moving *5 in, Swift would occasionally babysit the girls while she was out with friends or out of town on business. He usually ate dinner with Bruno and the girls. After Swift moved in, he drove the oldest child to and from school in New Braunfels for nine weeks. After he picked her up, he would take her back to his office where she worked on her homework. Bruno asked the girls to call Swift "Dad" and stated that he "was an important part of their li[ves]." At the time of the hearing, Bruno and Swift were still married and there was no pending lawsuit for divorce.
Swift testified that prior to moving in with Bruno, he ate dinner with the family almost every night and spent time with the girls before they went to bed. He stated that he moved in to Bruno's home immediately after their marriage on April 22, 2007, and that he spent most nights there. He kept his separate residence because he and Bruno planned to build a house in New Braunfels and then sell both of their houses. The girls started calling him "Dad" or "Daddy" immediately after he and Bruno were married. He helped to prepare the girls' breakfast, helped with homework, took them fishing, bathed the youngest child, and stated that he and Bruno shared the responsibility of caring for the girls. Swift, however, disagreed with the manner in which Bruno disciplined the girls and believed she punished them too severely.
In addition, Bruno's mother and four friends testified that they often visited Bruno's home and rarely saw Swift there, except on holidays. Swift's former employee testified that Swift moved in with Bruno a month after they married.
Taking as true all evidence favorable to the nonmovant, we conclude this evidence raises a fact issue as to whether Swift met the six-month requirement pursuant to section 102.003(a)(9). Two witnesses testified that Swift lived with the girls for over six months. Additionally, the evidence showed that Swift's interaction with the children from April to January was substantial, and that the children thought of him as their father. Because there is disputed evidence creating a fact issue regarding the length of time that Swift had actual care, control, and possession of the girls, the trial court cannot grant the plea and the issue must be resolved by the trier of fact.[1]See Miranda, 133 S.W.3d at 227-28. Swift's first issue is sustained.
In his second issue, Swift appeals the trial court's award of attorney's fees to Bruno. Bruno requested sanctions under Rule 13 of the Texas Rules of Civil Procedure and Chapters 9 and 10 of the Texas Civil Practice and Remedies Code. See Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001, 10.004 (Vernon 2008). Because we have concluded that the trial court erred in granting the plea to the jurisdiction, we cannot agree that Swift's pleadings were groundless or brought in *6 bad faith or for the purpose of harassment. See TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001, 10.004. Accordingly, Swift's second issue is sustained, and we also reverse the portion of the trial court's judgment awarding $4,000 in attorney's fees to Bruno.

CONCLUSION
Based on the foregoing analysis, we conclude the trial court erred in granting the plea to the jurisdiction and dismissing Swift's SAPCR for lack of standing. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.
REBECCA SIMMONS, Justice, dissenting to denial of en banc consideration.
Whether David Swift presented some evidence of "actual care, control, and possession" of Tina Bruno's children under Family Code section 102.003(a)(9) is dispositive in this case. See TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2009).[1] Because I believe the majority opinion misconstrues the statute, and ignores relevant case law from the Supreme Court of the United States and our sister courts, I respectfully dissent to the denial of the motion for rehearing en banc.
I agree with the standard of review as set forth in the majority opinion, as well as the trial court's evaluation of the evidence. The trial court was required to review the evidence and pleadings, and if the evidence raised a fact question, the court could not dismiss the action based on lack of standing. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004). Here, the trial court specifically found: "David Swift did not have the actual care, control and possession of the children, or any of the children," for the requisite six month period (emphasis added). I agree with the trial court that the activities of David Swift do not raise a fact issue in this case.
The following evidence is undisputed. Tina Bruno is the mother of the three adopted children, and the only legal parent. More than two years after Bruno obtained possession of the children, Bruno married Swift and, shortly thereafter, Swift resided with Bruno. Swift is neither the biological father of the children, nor is he the adoptive father. The children have always resided with Bruno. The parties dispute the length of time Swift resided in the home with the children, and Bruno contends that there is no evidence of actual care, control, and possession of the children. We, thus, turn to the evidence of Swift's involvement in the children's lives.
At best, the evidence shows Swift lived in Bruno's home for approximately nine months. According to Swift, he would: sometimes put cereal out for the children in the morning; eat dinner with the family; drive the children to school; help with homework; take the children fishing; bath the youngest child; and the girls called him "Daddy." The activities described are typical of those undertaken by stepparents, as well as by family and friends. The crux of the issue is whether these activities constitute some evidence of actual care, control and possession thereby giving Swift standing to seek possession of the children.
The majority's broad interpretation of section 102.003(a)(9) would give almost anyone involved with a child over the *7 course of six months standing to file a suit affecting the parent-child relationship (SAPCR). I do not believe the legislature intended to open the standing door to those with the limited contacts described by Swift. The words "actual care, control and possession" must mean more than driving, doing homework and putting out breakfast in accordance with a parent's wishes. Such a narrow interpretation of the statute is consistent with the constitutional rights of parents to possess and control their children. "[T]he interest of parents in the care, custody, and control of their children  is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Supreme Court has consistently recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. Likewise, Texas has long recognized that "[t]he natural right which exists between parents and their children is one of constitutional dimensions." Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.1976).
When reviewing statutes, we presume that the Legislature intended the statutes to be in compliance with the constitutions of both Texas and the United States. See TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005); City of Houston v. Clark, 197 S.W.3d 314, 320 (Tex.2006). In addition, we must give effect to the Legislature's intent as expressed in the actual language used in the statute. See Osterberg v. Peca, 12 S.W.3d 31, 38 (Tex.2000).
To establish standing, section 102.003(a)(9) requires the movant to have "actual care, control, and possession of the child" for six months. TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2009). "Control and possession" must mean more than simply residing in the household with the children and their parent for six months. This issue was squarely before the court in In the Interest of M.J.G., 248 S.W.3d 753, 756-57 (Tex.App.-Fort Worth 2008, no pet.), where the grandparents sought custody of the children based on their actual care, control, and possession of the children under section 102.003(a)(9). The grandparents testified that, with the exception of a two-week period, the children had lived with them from birth, that they cared for them, and they supported them financially. Id. at 757-58. Despite the evidence, the trial court declined to hold that the grandparents had actual care, custody, and control of the children because:
Even though the children were living in the [grandparent's] home and the [grandparents] performed day-to-day caretaking duties for the children, the children's parents were also living with the children in the home, and there was no evidence that [the parents] did not also care for the children or that [the parents] had abdicated their parental duties and responsibilities to the grandparents.
Id. at 758-59. Thus, the court held, as a matter of law, the grandparents had no standing.
Likewise, in In re K.K.C., No. 09-09-00131-CV, 2009 WL 2045331, at *5 (Tex.App.Beaumont July 16, 2009, no pet. h.), the court held that a mother's paramour, residing with mother and child for seven years, had no standing despite substantial interaction with the child including being called "Dad." Analyzing the statute, the Court of Appeals noted that the word "`control' must mean something more than the control implicit in having care and possession of the child if the word is to be given effect and treated as more than surplusage." Id. at *3.
The K.K.C. case is significant in another manner; it demonstrates the hazard in *8 interpreting the standing requirement too broadly. The paramour seeking joint custody of the child was not the biological father and the biological father appeared in the suit. Id. at *3. Additionally, although the temporary orders named the mother and paramour joint managing conservators, the orders also preserved the visitation rights of the child's father. Under this majority's interpretation of the statute, a stepparent or paramour who lived with the child and one parent more than six months would have standing to bring a SAPCR, despite the existence of another parent with possessory rights.
The statute clearly does not support such an expansive interpretation. A comparison of section 102.003(a)(9) with section 102.003(a)(11), the provision that typically applies to give stepparents standing is illuminative. See TEX. FAM.CODE ANN. § 102.003(a)(9), (11) (Vernon 2009). Section 102.003(a)(11) provides standing to a person with whom the child and a parent have resided for at least six months if the "parent is deceased at the time of the filing of the petition." See id.; In re SSJ-J, 153 S.W.3d 132, 137 (Tex.App.-San Antonio 2004, no pet.). Many stepparents play an important role in their stepchildren's lives contributing to their care over the course of years, yet they generally will not have standing by virtue of their involvement unless the parent dies. Clearly section 102.003(a)(9) requires more than just residing with a child and the attendant daily interaction. It would be difficult to picture a stepparent who resides with a child over the course of years who does not on occasion help with homework, serve breakfast, and attend to various child care duties. However, under the majority's broad interpretation, section 102.003(a)(11)'s requirement that the parent be deceased would be superfluous because, as a practical matter, standing would exist under (a)(9) by virtue of the normal interaction that would occur between a stepparent and child residing together for six months. But see Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 442 (Tex.2009) ("[W]e do not interpret a statute in a manner that renders parts of it meaningless."); City of LaPorte v. Barfield, 898 S.W.2d 288, 292 (Tex.1995) ("We will not read statutory language to be pointless if it is reasonably susceptible of another construction."). A narrower interpretation of 102.003(a)(9) is warranted to avoid an expansion of standing to persons never anticipated by the Legislature and to preserve the constitutional right of parents to control their children.
Based on a review of the entire record in this particular case, the evidence does not create a fact issue that David Swift had "actual care, control, and possession of the children." There is no evidence that Swift "made any decisions concerning [the children's] health, education, and welfare; had access to [the children's] medical and educational records; or could consult with school officials or with medical personnel." See In re M.K.S.-V., No. 05-08-00568-CV, 2009 WL 2437076, at *4 (Tex.App.-Dallas, no pet.). Likewise, there is no evidence Bruno did not also care for the children or that she abdicated her responsibilities toward her children. Accordingly, although he may have cared for the children, and participated in their daily activities, there is legally insufficient evidence that Swift maintained actual care, control, and possession as required by section 102.003(a)(9). I, therefore, respectfully dissent to the denial of the motion for rehearing en banc.
NOTES
[1] Bruno contends that, even taking as true Swift's "self-serving" testimony that he resided with the girls for over six months, he admitted that he had no actual control over the girls for at least six months, and therefore no fact issue was raised to prevent the trial court from granting the plea to the jurisdiction. We disagree that Swift made such an admission. Bruno is referring to testimony elicited under cross-examination, where Swift stated that Bruno controlled his interactions with the girls and controlled their discipline; however, Swift later stated that he did not relinquish control of the girls to Bruno, but rather allowed Bruno to discipline the children in the manner in which the girls' therapist advised they be disciplined. Furthermore, as Swift notes, the statute does not require that the petitioner's care, control, or possession of the children be exclusive. See T.W.E., 828 S.W.2d at 808.
[1] "[A] person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."