**Reversed and Remanded and Memorandum Opinion filed May 22, 2012.**



In The

# Fourteenth Court of Appeals

———————————

NO. 14-11-00395-CV
NO. 14-11-00412-CV

———————————

**VICTORIA V. OCHSNER, Appellant**

**V.**

**PRESTON A. OCHSNER, Appellee**

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2001-54131**

## MEMORANDUM OPINION

Appellant, Victoria V. Ochsner, raises two issues in this consolidated appeal. In her first issue she contends that the trial court abused its discretion in denying her motion for enforcement of child support order ("Enforcement Motion"). In her second issue she argues that the trial court abused its discretion by imposing sanctions against her. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee, Preston A. Ochsner, and Victoria were divorced in 2001. They have one child of the marriage, A.B.O., who was three-years-old at the time of the divorce. The divorce decree ("Decree") ordered Preston to pay child support, in relevant part, as follows:

### Child Support

IT IS ORDERED AND DECREED that PRESTON A[.] OCHSNER *shall pay* to VICTORIA V. OCHSNER child support in the amount of $240[.]00 per month, in two (2) installments per month of $120[.]00 each, with the first installment being due and payable on January 1, 2002, and the second installment of $120[.]00 being due and payable on January 15, 2002, and a like installment being due and payable each 1st and 15th day of each month thereafter until the date of the earliest occurrence of one of the following events[:]

…

the child no longer attends Enron's Kid's Center day care; …

….

On the first day of the month following discontinuation of the child's day care at Enron Kid's Center PRESTON A. OCHSNER is obligated to pay and *shall pay* to VICTORIA V[.] OCHSNER child support of $800[.]00 per month, in two (2) installments per month of $400[.]00 each, with each payment being due and payable on the 1st and 15th days of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below: ….[1]

(Emphasis added).

This appeal stems from the Enforcement Motion Victoria filed against Preston. Victoria sought enforcement of the Decree and requested that Preston be held in contempt

---

[1] There are other events listed in the Decree that would result in the termination of child support. None of those events are being raised in this case as an event terminating Preston's child support obligation.

and that judgment be rendered for arrearages, among other forms of relief.[2] Preston generally denied the allegations and specifically alleged that the Decree sought to be enforced was ambiguous.

A hearing on the Enforcement Motion was conducted. Shortly after Victoria began testifying, Preston requested a voir dire examination. Voir dire established that A.B.O. stopped attending Enron's day care center on or about September 30, 2002, when she was four-years-old. Preston then moved for judgment on the basis that his obligation under the Decree to pay any child support ended once A.B.O. stopped attending Enron's child care facility. Preston argued that because the second paragraph under the "child support" section of the Decree does not, within itself, contain "order language," the "contempt, judgment for arrearage and attorney's fees can't be supported because there is no underlying order." The trial court agreed, stating that "it has to be in order language…. obligated doesn't get you there." The trial court granted judgment for Preston, and the hearing concluded.

The trial court issued an order denying the Enforcement Motion and subsequently issued findings of fact and conclusions of law. The trial court concluded that "[t]he Decree does not contain an order for Preston … to pay periodic monthly child support after September 30, 2002." Consequently, the trial court also concluded that without an order to make periodic child support payments, Victoria was not entitled to a contempt finding or an arrearage judgment against Preston.

Following the hearing on the Enforcement Motion, Preston filed a motion for sanctions against Victoria and Victoria's trial counsel. In his motion for sanctions, Preston alleged that Victoria and her attorney filed a groundless pleading in violation of

---

[2] Victoria also sought confirmation of arrearages, judgment for the arrearages plus interest, court costs and attorney's fees, a wage withholding order, bond or other form of security, and alternatively if the order was found ambiguous—a clarification order.

3

Texas Rule of Civil Procedure 13, and a frivolous pleading in violation of section 10.001 of the Texas Civil Practices and Remedies Code.[3] Preston argued that because there was no underlying order for child support, the Enforcement Motion itself was frivolous and brought in bad faith.

The trial court conducted a hearing on the motion for sanctions. As a result of the hearing, the trial court found that the Enforcement Motion was groundless "in that it had no basis in law or fact and was not warranted by a good-faith argument for the extension, modification, or reversal of existing law." Additionally, the trial court concluded that the particular conduct of Victoria and her counsel warranting sanctions was the filing of the Enforcement Motion "when a cursory review of the alleged underlying order would cause a reasonable person or attorney to recognize that there was no child support order to enforce."[4] The trial court ordered both Victoria and her counsel to pay the attorney's fees reasonably incurred by Preston in the amount of $7,800.00.

Following the imposition of sanctions, Victoria filed a motion for new trial. After listening to argument from both sides, the trial court decided to eliminate the sanctions imposed on Victoria's trial counsel. The dollar amount remained unchanged, but was imposed solely against Victoria. The trial court then denied the motion for new trial. This appeal followed.

---

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West 2002); Tex. R. Civ. P. 13.

[4] Further, the trial court also concluded that: Victoria's allegation and factual contention in the Enforcement Motion that Preston had violated a court order when there was no court order for child support did not have evidentiary support after a reasonable opportunity for investigation or discovery; and Victoria's claim in the Enforcement Motion that Preston was ordered to pay child support and that he contemptuously disobeyed the court's order was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

## ANALYSIS

Victoria presents two issues for our review. In her first issue, she argues that the trial court erred in finding that no valid child support order existed and in denying relief requested in the Enforcement Motion. In her second issue, she argues that the trial court abused its discretion in imposing Rule 13 and Chapter 10 sanctions.

### A. Enforcement Motion

Victoria first argues that the trial court erred in denying the Enforcement Motion because the underlying child support order contained sufficiently specific language to hold Preston in contempt for his violations of that order. Alternatively, she argues that even if the child support order is too indefinite for contempt purposes, the language is sufficiently specific for enforcement through Chapter 157 of the Family Code. *See* Tex. Fam. Code Ann. §§ 157.001–.426 (West 2008 & Supp. 2011). Preston argues that this Court has no jurisdiction on direct appeal to decide the contempt issue and that there is no underlying child support order to enforce.[5] The trial court found in its findings of fact and conclusions of law that the Decree "does not contain an order for Preston … to pay … child support after September 30, 2002." Based on that conclusion, the trial court denied the Enforcement Motion in its entirety.

To determine whether the trial court erred in denying the Enforcement Motion, we must first determine whether there is an underlying child support order. Preston correctly asserts that section 154.124 of the Family Code provides that if parties enter into an agreement concerning child support, and that agreement is in the child's best interest, then the court shall render an "order" in accordance with that agreement. Tex. Fam. Code Ann. §154.124 (West 2008). He contends that without the issuance of such an "order," a party

---

[5] Because we will not reach the contempt issue, we need not decide whether or not we have jurisdiction over it.

cannot seek enforcement of that agreement through the Family Code. Preston argues that in this case, the trial court never rendered an "order" as defined in the Family Code because of the lack of "order language" within the second paragraph of the "Child Support" section of the Decree. Therefore, he contends, because there is no "order," the terms provided in this paragraph of the Decree detailing child support cannot be enforced though the remedies of Chapter 157 of the Family Code. [6] *See* Tex. Fam. Code Ann. §§ 157.001–.426.

We interpret a divorce decree like any other judgment, reading the decree as a whole and effectuating the order in light of the literal language used, if that language is unambiguous. *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003). When the language of the decree is unambiguous, we interpret the judgment literally. *Id*. at 441–42. We are to construe the decree as a whole toward the goal of harmonizing and giving effect to all that is written. *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997). We should determine what the trial court adjudicated from a fair reading of all provisions in the final judgment.. *Id*.

Preston mistakenly relies on *Marichal v. Marichal*, 768 S.W.2d 383 (Tex. App.—Houston [14th Dist.] 1989, writ denied), where "explicitly missing from the court's conclusion was the obligation to make the payments."[7] *Id*. at 384. Because the *Marichal* divorce decree did not contain an order to pay child support, the trial court erred in reducing the arrearages to judgment. *Id.*

---

[6] Prior to Victoria's filing of the Enforcement Motion, Preston filed a Petition to Modify the Parent-Child Relationship. In that petition, Preston requested that the "order" be modified. Further the petition states that "[t]he support payments previously ordered should be increased until the child is eighteen years of age, …." While not dispositive on appeal, this Court notes the change in position of Preston from the petition to the hearing on the Enforcement Motion.

[7] In *Marichal*, the divorce decree stated: "The court is further of the opinion that the best interest of the minor child would be served if respondent, Louis A. Marichal, was ordered to pay the petitioner, Gloria Irma Marichal, for the use and benefit of the minor children of the parties, the sum of …" 768 S.W.2d at 383.

In contrast, in the present case, the divorce decree specifically states "IT IS ORDERED AND DECREED …. On the first day of the month following discontinuation of the child's day care at Enron Kid's Center PRESTON A. OCHSNER is obligated *to pay* and *shall pay* to VICTORIA V[.] OCHSNER child support of $800[.]00 per month …." (emphasis added).

The paragraph directing $800.00 per month in child support payments is within, and part of, the "Ordered and Decreed" portion of the divorce decree dealing with child support and it specifically states that Preston "shall pay" child support of $800.00 per month to Victoria. The use of the term "shall pay" is definite and satisfies the requirement of an "order" to pay child support. *See In re Kuykendall*, 957 S.W.2d 907, 909 (Tex. App.—Texarkana 1997, no pet.) (holding that an order using the term "shall pay," even without "ordered, judged or decreed" was sufficient to constitute an order to pay child support).

The trial court erred in concluding that no underlying child support order existed. However, because the trial court has not had the opportunity to rule on the remaining issues in light of our holding, we decline to decide Victoria's remaining arguments with regard to the Enforcement Motion. *See In re J.I.M.*, 281 S.W.3d 504, 510 n.5 (Tex. App.—El Paso 2008, pet. denied) (declining to discuss amount of arrearages owed because trial court had not had the opportunity to rule on that issue in light of the appellate court's opinion). We sustain Victoria's first issue.

### B. Sanctions Order

Next, Victoria argues that the imposition of sanctions against her was an abuse of discretion. We review the trial court's imposition of Rule 13 and Chapter 10 sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Parker v. Walton*, 233 S.W.3d 535, 539 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We may

7

reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles. *Id.* A trial court abuses its discretion in imposing sanctions if it bases its order on an erroneous view of the law. *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied). "In reviewing sanctions orders, the appellate courts are not bound by a trial court's findings of fact and conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion." *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

Rule 13 authorizes the imposition of sanctions on a party that files a pleading that is groundless and either brought in bad faith or with the purpose to harass. Tex. R. Civ. P. 13. "Groundless" means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. *Id.* Texas Civil Practice and Remedies Code section 10.004 allows sanctions if a motion or pleading signed by a person: (1) is presented for an "improper purpose," including harassment or to unnecessarily delay or increase the expense of litigation; (2) contains a legal contention that was not warranted by existing law or non-frivolous argument for modification, extension or reversal of current law; (3) contains factual contentions that are not supported by evidence, or is unlikely to have evidentiary support after discovery; or (4) contains denials not warranted by the evidence. Tex. Civ. Prac. & Rem.Code Ann. §§ 10.001, 10.004 (West 2002).

It is clear that the trial court imposed sanctions based on its erroneous conclusion that there is no underlying child support order to enforce. Accordingly, the trial court abused its discretion in finding that the Enforcement Motion was groundless, brought for the purpose of harassment and in bad faith. *See In re Y.B.*, 300 S.W.3d 1, 5–6 (Tex. App.—San Antonio 2009, pet. denied) (holding that underlying claim had merit and, therefore, trial court's imposition of sanctions finding that underlying claim was groundless, brought in bad faith and for the purpose of harassment was an abuse of

8

discretion); *Ball v. Rao*, 48 S.W.3d 332, 336–338 (Tex. App.—Fort Worth 2001, pet. denied) (holding that imposition of sanctions was abuse of discretion because claims had evidentiary support and were, therefore, not baseless, frivolous, or groundless). Concluding that the imposition of sanctions was an abuse of discretion, we need not address Victoria's remaining arguments regarding the sanctions imposed against her.

We sustain Victoria's second issue.

## CONCLUSION

Having determined that the trial court erred in concluding that no underlying child support order existed, we reverse the trial court's order denying the Enforcement Motion, reverse the trial court's sanction order, and remand for further proceedings consistent with this opinion.

/s/     Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[8]

---

[8] Senior Justice Margaret Garner Mirabal sitting by assignment.