**IN the INTEREST OF R.E.R., a Child**

**NUMBER 13-14-00489-CV**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed August 25, 2016

Rehearing Denied October 20, 2016

Hon. Susan Jorgeson, Hon. Ian Pittman, Austin, Hon. Christopher Lee Gadoury, The Lanier Law Firm, P.C., Houston, TX, Hon. Emily Smith, for Appellant.

Hon. Ashley J. Pall, Victoria, TX, Hon. Alex Hernandez Jr., for Appellee.

Before Chief Justice Valdez and Justices Garza and Longoria

## OPINION

Opinion by Chief Justice Valdez

Appellant, A.R., appeals the trial court's dismissal of her suit affecting the parent-child relationship of the child, R.E.R. By three issues, A.R. contends that (1) the trial court violated her due process rights by dismissing her suit; (2) the trial court erroneously found that she lacked standing pursuant to section 102.003(a)(11) of the Texas Family Code; and (3) the trial court erroneously dismissed her claim of adoption by estoppel because such a claim does not require standing pursuant to chapter 102 of the family code. *See* TEX. FAM. CODE ANN. § 102.003(a)(9), (11) (West, Westlaw through 2015 R.S.). We reverse and remand.

## I. BACKGROUND

A.R. and appellee, N.G., were in a same-sex relationship, and they decided that N.G. would have a child. A donor provided the sperm. A.R. and N.G. signed a donor agreement which stated, among other things, that N.G. "shall have absolute authority and power to appoint her life partner [ (A.R.) ] as guardian for CHILD, and that the mother and guardian may act with sole discretion as to all legal financial, medical and emotional needs of CHILD without any involvement with or demands of authority from DONOR and DONOR's WIFE." The agreement further stated that A.R. and N.G. "intended to go through the process known as second parent adopting" for R.E.R. N.G. gave birth to R.E.R., on July 21, 2009. According to A.R., both she and N.G. parented R.E.R. and resided together for approximately the next four years of R.E.R.'s life.

In June of 2013, A.R. and N.G. separated. On July 5, 2013, N.G. drafted and signed a notarized document (the "July 2013 document") stating:

I [N.G.] temporarily give temporary rights of [R.E.R.] to [A.R.].

[A.R.] will have the rights and say so to any decision needed to be made for [R.E.R.].

I [N.G.] will be able to see [R.E.R.] and keep her when able to. Also I [N.G.] will still be able to voice opinion for [R.E.R.'s] well-being.

In July of 2013, R.E.R. resided exclusively with A.R., and A.R. and N.G. agreed that they would implement a possession schedule. Subsequently, R.E.R. resided with N.G. and R.E.R. spent some weekends with A.R. In October of 2013, N.G. stopped allowing R.E.R to spend weekends with A.R. In November and December of 2013, A.R. continued visitation with R.E.R. two to three days per week at school and on weekends when N.G. allowed her visitation. According to A.R., throughout this time period, she "raised the issue [with N.G.] for the necessity for court orders for R.E.R.—however[,] [N.G.] informed her throughout this time that she considered [A.R.] to be R.E.R.'s mother, and that there was no need for the court to get involved."

On February 24, 2014, A.R. filed her original petition in a suit affecting the parent-child relationship requesting temporary orders and injunction. N.G. filed her original answer on March 20, 2014 claiming that A.R. lacked standing because "she did not have care, control, and possession" of R.E.R. A.R. amended her petition on April 8, 2014, and asserted that she had standing pursuant to section 102.003(a)(9) of the Texas Family Code. On April 25, 2014, A.R. filed her trial brief in support of standing. N.G. filed a response to A.R.'s brief on April 28, 2014, arguing, among other things, that although she signed the July 2013 document, she later revoked that document by signing a notarized document, which is included in the record, that she claimed nullified the July 2013 document. N.G. also filed a plea to the jurisdiction on that date arguing that A.R. is not R.E.R.'s biological mother and had "not had care, control and possession of the child[ ]."

On May 14, 2014, the trial court issued temporary orders finding that it was not in R.E.R's best interest to sever her relationship with A.R. and that R.E.R. "has a special and important relationship with" A.R. The trial court appointed N.G. as temporary sole parent managing conservator and A.R. as temporary non-parent possessory conservator of R.E.R.

On May 21, 2014, N.G. filed a motion to dismiss for lack of standing. On May 29, 2014, the trial court issued its order granting N.G.'s motion to dismiss for lack of standing and plea to the jurisdiction and dismissing A.R.'s suit without prejudice. Upon request, the trial court issued find-

ings of fact and conclusions of law. This appeal followed.

## II. STANDING

■ By her second issue, A.R. contends that the trial court erroneously concluded that she lacked standing to bring a suit under section 102.003(a)(11) when she actually asserted standing pursuant to section 102.003(a)(9) of the family code. *See* TEX. FAM. CODE ANN. § 102.003(a)(9), (11); *see also In re Y.B.*, 300 S.W.3d 1, 4 (Tex. App.—San Antonio 2009, pet. denied) ("The question of who has standing to bring an original suit affecting the parent-child relationship seeking managing conservatorship is a threshold issue.... Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law.") (internal citations omitted). Specifically, A.R. argues that the trial court applied the wrong date when it analyzed standing under section 102.003(a)(11). *See id.* Appellee responds that the trial court properly concluded that A.R. lacked standing under section 102.003(a)(9).[1] *See id.*

In its findings of fact and conclusions of law, the trial court stated:

> Based on the unrefuted testimony that the biological mother [N.G.], and the girlfriend [A.R.] of [N.G.] had stopped living together for more than a six-month period which ended more than 90 days before the date of the hearing, the Court finds, applying Family Code Section 102.003(a)(11), that [A.R.] has no standing to bring any litigation in the form of a suit affecting the parent/child relationship.[2]

1. Appellee does not address A.R.'s contention that the trial court improperly calculated the dates by finding that A.R. and appellee stopped residing together more than ninety days prior to filing suit. *See* TEX. FAM. CODE

ANN. § 102.003(a)(11) (West, Westlaw through 2013 R.S.).

2. Here, the trial court considered evidence in making its determination that A.R. lacked standing. Therefore, findings of fact and con-

*See id.* § 102.003(a)(11). Thus, we disagree with N.G. that the trial court found that A.R. lacked standing pursuant to section 102.003(9). Section 102.003(a)(11) states that a suit affecting the parent-child relationship may be filed by "a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition." *Id.*

■ However, A.R. did not claim, nor could she have claimed, that she had standing to bring suit in this case pursuant to section 102.003(a)(11). And, although we agree with A.R. that 102.003(a)(11) is inapplicable in this case, "[t]he Texas Legislature has provided a comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 528 (Tex. App.—Austin 2011, no pet.) (internal quotations omitted) (citing and quoting *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, no pet.)). Thus, pursuant to that statutory framework, A.R., as the party seeking relief in a suit affecting the parent-child relationship, must have alleged and established standing within those parameters. *Id.*

As with other issues implicating subject-matter jurisdiction, analysis of whether a party has standing begins with the plaintiff's live pleadings. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. We must also consider evidence the parties presented below that is relevant to the jurisdictional issues, including any evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading. *Id.* at 527–28.

■ Here, as to any claims by N.G. challenging A.R.'s pleadings, A.R. claimed that she had standing in this case under section 102.003(a)(9), which provides that a person, other than a foster parent, has standing to bring a suit affecting the parent-child relationship if that person "has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). As facts in support of her pleadings, A.R. stated that (1) N.G. and she had agreed that N.G. would have a baby, (2) the couple would co-parent the baby once it was born, (3) a donor provided the sperm, (4) the parties signed a donor agreement documenting the couple's intent that A.R. adopt the baby, (5) N.G. agreed that A.R. would adopt R.E.R., (6) A.R. resided with the child for the first four years of R.E.R's life, (7) N.G. gave the child, A.R.'s last name, (8) R.E.R. called A.R. "mommy," (9) N.G. signed the July 2013 document giving A.R. temporary custody of R.E.R., (10) A.R. had actual care, control, and possession of R.E.R. for at least six months, and (11) A.R. had filed her petition within ninety days of that period. Thus, construing the pleadings liberally as we must, we conclude that A.R. gave fair notice of her basis to bring suit, and she sufficiently pleaded that she had actual care, control, and possession of R.E.R. *See Jasek*, 348 S.W.3d at 531 (ex-

clusions of law were appropriate in this case. *See Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 138 S.W.3d 907, 908 (Tex. 2004) (recognizing that findings of fact were appropriate in case where the trial court granted a motion to dismiss for lack of subject matter jurisdiction "[b]ecause the trial court took evidence and because the trial court's findings 'could properly be considered by the appellate court' ").

plaining that when a party fails to file special exceptions to the petition, we must construe the pleadings liberally); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause."). However, it appears that N.G. also challenges the existence of jurisdictional facts in this case.

[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists.... If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

....

Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.

*Miranda*, 133 S.W.3d at 227–28 (internal citations omitted).

This Court has not construed the meaning of the language in section 102.003(a)(9) requiring a petitioner under that section to have "actual care, control, and possession of the child." *See* TEX. FAM. CODE ANN. § 102.003(a)(9). A.R. cites cases wherein she argues that our sister courts have liberally construed this language while N.G. cites cases wherein our sister courts have construed this language strictly. *See Jasek*, 348 S.W.3d at 532 (rejecting the Texas Department of Family and Protective Services' argument that the nonparents lacked standing because they did not have "actual control" of the children and concluding that "actual control" does not necessarily mean that the nonparent had the "authority to make legal decisions, decisions of legal significance[, which included] the responsibilities of a legal parent" and that instead, "actual control" must mean the actual power or authority to guide or manages or the actual directing or restricting of the child); *In re K.K.C.*, 292 S.W.3d 788, 793 (Tex. App.—Beaumont 2009, no pet.) (explaining that the nonparent lacked standing because there was no evidence that the mother agreed to relinquish legal rights concerning the child and that the evidence established the opposite because the mother had refused to sign adoption papers, which would have given the nonparent legal rights); *In re M.K.S.–V.*, 301 S.W.3d 460, 465 (Tex. App.—Dallas 2009, pet. denied) (conclud-

ing that the trial court erred in finding that the non-biological parent lacked standing because "the possession agreement and the parties' actions evinced an intent that the child occupy K.V.'s home consistently over a substantial period of time").

In *In re K.K.C.*, the Beaumont Court of Appeals determined that "[i]n this statute, 'control' must mean something more than the control implicit in having care and possession of the child" and "must be understood in the context of rights, duties, and responsibilities of a parent." *In re K.K.C.*, 292 S.W.3d at 793. The court recognized, however, that "[t]he statute does not require that the person asserting standing demonstrate he had exclusive control of the child." *Id.* The court ultimately held that the nonparent lacked standing to file suit under section 102.003(a)(9). *Id.* The court reasoned that until the nonparent obtained temporary orders from the trial court, "[he] had no legal right of control over the child and no authority to make decisions on behalf of the child" because the parent had "the right to have physical possession of the child," the right to designate the child's residence, "the 'duty of care, control, protection, and reasonable discipline of the child'," "the right to make decisions of legal significance for the child," the right to make decisions concerning the child's education, and the parent "lived with the child, adequately cared for the child, and did not relinquish to [the nonparent] petitioner or abdicate her parental rights, duties, and responsibilities." *Id.*

At a hearing, A.R. testified that she and N.G. agreed to have a child together, they signed the donor agreement stating A.R. would adopt the child, and she produced the July 2013 document showing that N.G. gave her certain rights to possession of R.E.R. and to parent R.E.R. Thus, even

assuming, without deciding, that Beaumont's stricter interpretation of section 102.003(a)(9) applies, A.R. has provided some evidence that raises a fact issue regarding whether, by signing the July 2013 document, N.G. gave A.R. the legal right of control over R.E.R., the authority to make decisions on behalf of R.E.R., the right to physical possession of R.E.R., the right to make decisions of legal significance for R.E.R., and the right to make educational decisions concerning R.E.R. *See id.* And, although N.G. limited A.R.'s right to see R.E.R., there are questions of fact regarding whether N.G. revoked the July 2013 document.

Moreover, based on the trial court's findings of fact and conclusions of law that A.R. lacks standing under section 100.003(a)(11), which requires that the nonparent live with the child for a six-month period which had ended not more than ninety days prior to bringing suit and that the parent be deceased, which is a section of the family code that could not apply to the facts of this case, we conclude that the record does not show that the trial court has considered the relevant evidence to determine whether A.R. has standing under section 102.003(a)(9). *See Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 227 (explaining that the trial court is required to consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised). And, as set out above, A.R. presented some evidence that, when taken as true, at least raises a fact issue regarding her allegation that she has standing pursuant to section 102.003(a)(9). *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) ("[W]hen a Texas appellate court reviews the standing of a party sua sponte [or for the first time on appeal], it must construe the petition in favor of the party, and if necessary, review the entire record to determine if *any evidence* sup-

ports standing.") (emphasis added). Therefore, based on the record before us and because there is some evidence supporting standing, we sustain A.R.'s second issue.

### III. Conclusion

We reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.[3]

---

**3.** Because they are not dispositive of this appeal, we need not address A.R.'s first and third issues. *See* Tex. R. App. P. 47.1.