

**NUMBER 13-18-00622-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

**IN THE INTEREST OF B.U.H., J.R.H., R.W.H., AND P.L.H.**

**On appeal from the 24th District Court
of Victoria County, Texas.**

**CONCURRING AND DISSENTING
MEMORANDUM OPINION**

**Before Chief Justice Contreras and Justices Longoria and Perkes
Concurring and Dissenting Memorandum Opinion by
Chief Justice Contreras**

I agree with the majority that appellees did not establish standing under § 102.003(a)(9) of the family code, but I would find that appellees instead had standing to sue under § 102.004(a)(1). That said, I would further find that the trial court should have dismissed the underlying cause as to the two eldest children because another court already had continuing, exclusive jurisdiction over those children. As to the two younger

children, W.I.H.'s issues lack merit. Therefore, I concur in part and dissent in part.

## I. BACKGROUND

In their June 16, 2016 original petition, appellees alleged that they had standing under § 102.003(a)(9) and that "[n]o court has continuing jurisdiction of this suit or of the children the subject of this suit." In an affidavit attached to the petition, appellee W.S., the children's grandmother, averred as follows:

> My name is [W.S.], I am the petitioner in this case. My daughter [K.H.] has left her children in my care on January 18, 2016. My daughter has no fixed residence or stability and I fear she will pick up the children and attempt to remove them. There have been sanitation and cleanliness issues with the home that she was having the children in. I fear for the safety of the children as she has no vehicle or home to have the children in. [The Department] has been involved with these children and had placed [K.H.] on a safety plan. [K.H.] has let the Medicaid lapse on three of the children and would not be able to provide medical care. The psychological effect of my daughter [K.H.] visiting the children when she has met with them is negative and affecting their schooling and behavior. She has not attended any doctor's appointments for the children since she left the children in my care and has a history of not following up with the children's medical appointments and missing appointments. My daughter [K.H.] has not shown that she is able to handle being the sole caregiver of the children when she previously had care of them or provide basic care for them. We would ask the Court to not let her remove the children until we have a hearing establishing Temporary Orders.
>
> [K.H.], a party in this case, is a transient person. I have exercised due diligence to locate the whereabouts of this party and have been unable to do so.

The trial court's temporary restraining order, temporary injunction, and final judgment each stated that the court had jurisdiction over the case and all the parties, but those orders did not specify the basis for appellees' standing.

W.I.H. filed an answer on July 8, 2016, conceding that the trial court had jurisdiction over the cause but denying that appointment of appellees as managing conservators was in the children's best interests. W.I.H. later filed another "Original Answer" on February

20, 2018, in which he additionally argued, among other things, the following: (1) appellees lack standing because they did not have "actual care, control, and possession" of the children for at least six months at the time their petition was filed; (2) W.S.'s affidavit did not name him personally and therefore, the trial court erred in excluding him from possession of the children in its temporary orders; and (3) the trial court lacks jurisdiction because continuing exclusive jurisdiction lies in the 25th District Court of Lavaca County. In support of the latter argument, W.I.H. noted that the Office of the Attorney General (OAG) had brought a child support review action against him and K.H. in the 25th District Court in 2012. He attached a copy of a final order rendered by the 25th District Court on July 23, 2012, compelling W.I.H. to pay monthly cash medical support and K.H. to apply for Medicaid on behalf of B.U.H. and J.R.H.[1]

The record reflects that the OAG filed an "Original Petition in [SAPCR], Suit for Modification, and Motion to Confirm Support Arrearage" in the 25th District Court on June 21, 2016—five days after the instant custody suit was brought by appellees in Victoria County. By this pleading, the OAG sought to (1) modify the 2012 child support order as to B.U.H. and J.R.H., and (2) establish a child support obligation as to R.W.H. and P.L.H. On September 7, 2017, W.S. filed a motion to transfer as "intervenor" in the 25th District Court proceedings. The motion argued that the children's principal residence is located in both DeWitt County and Victoria County and asked for the matter to be transferred to the latter forum. The 25th District Court granted the motion to transfer over W.I.H.'s written objection, and the 24th District Court then consolidated the transferred matter with the instant case.

---

[1] R.W.H. and P.L.H. were born subsequent to this order.

3

According to the final judgment, W.S. and B.S. appeared with counsel at trial on August 20, 2018. The judgment states that K.H. and W.I.H., though properly notified and served with citation, did not appear. The appellate record does not contain a transcript of the trial.[2]

The trial court's findings of fact and conclusions of law stated in part as follows:

***Non-Exclusive Findings of Fact***

The Court makes the following findings, by clear and convincing evidence:

. . . .

6.    As of the filing of this suit, the children subject of this suit had been in the actual care, custody, and possession of the Petitioners for at least six months ending not more than 90 days preceding the date of the petition filed in this case.

. . . .

15.    Respondent, [K.H.], has had no significant contact with the children subject of this suit since the filing of Petitioner[s'] suit.

16.    The whereabouts of Respondent, [K.H.], is generally unknown to Petitioners as Respondent [K.H.] appears to be a transient person.

17.    Respondent, [K.H.], has an alleged history of abusing controlled substances and criminal activity.

18.    Respondent, [K.H.], has not provided child support, food, clothing, shelter, medical care, or other necessities of the children since at least the filing of Petitioner[s'] suit.

19.    Respondent, [W.I.H.], has had no significant contact with the children subject of this suit since the filing of Petitioner[s'] suit.

20.    Respondent, [W.I.H.], has not yet been granted parole by the Texas Department of Criminal Justice and any date of release is unknown to the Court.

21.    Respondent, [W.I.H.], has a history of criminal activity as

---

[2] Pursuant to W.I.H.'s request, this Court abated the appeal and remanded to the trial court in 2019 to determine whether the clerk's or reporter's records were incomplete and to render any orders necessary to ensure the records are complete. The trial court confirmed in an order that the records are complete.

demonstrated by his incarceration with the Texas Department of Criminal Justice.

22. Respondent, [W.I.H.], has not provided child support, food, clothing, shelter, medical care, or other necessities of the children since at least the filing of Petitioner[s'] suit.

. . . .

### Non-Exclusive Conclusions of Law

The Court makes the following conclusions of law:

1. The Court has jurisdiction of the parties to the suit and the children subject of this suit.

2. Petitioners [W.S.] and [B.S.] have standing to bring their suit.

3. Petitioners [W.S.] and [B.S.] should be appointed as joint managing conservators of the children subject of this suit.

4. Respondent [K.H.] should be appointed as possessory conservator of the children subject of this suit.

5. Respondent [W.I.H.] should be appointed as possessory conservator of the children subject of this suit.

## II. DISCUSSION

### A. Standing

By his first issue on appeal, W.I.H. contends the trial court lacked jurisdiction because appellees did not have standing to sue. Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Generally, a plaintiff has the initial burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* "When reviewing standing on appeal, we construe the petition in favor of the plaintiff and, if necessary, review the entire record to determine whether any evidence supports standing." *Deluxe Barber Sch., LLC v. Nwakor*, 609 S.W.3d 282, 291 (Tex. App.—Houston [14th Dist.] 2020, pet. filed); *see Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *In re R.E.R.*, 534 S.W.3d 1, 6 (Tex. App.—Corpus

Christi–Edinburg 2016, no pet.).

The majority correctly concludes that appellees did not have "actual care, control, and possession" of the minor children at issue "for at least six months ending not more than 90 days preceding the date of the filing of the petition." The record firmly shows that the children were left in appellees' care on January 18, 2016, and that appellees filed their original petition on June 17, 2016. The petition was premature because appellees had care of the children for under six months at the time it was filed. *See* TEX. FAM. CODE ANN. § 102.003(a)(9).

However, even when the requisites of § 102.003(a)(9) are not met, a grandparent has standing to seek managing conservatorship of a child under family code § 102.004(a)(1) if there is "satisfactory proof to the court" that "the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 102.004(a)(1). The evidence in the record supports a finding of standing under this section.[3] Specifically, W.S. stated in her affidavit that: (1) K.H., the children's mother, "has no fixed residence or stability" and is "transient"; (2) there were "sanitation and cleanliness issues" with the home K.H. previously was living in with the children; (3) CPS has been involved with these children and had placed [K.H.] on a safety plan; (4) K.H. let the children's Medicaid coverage lapse and "would not be able to provide medical care"; (5) K.H.'s visits have had a "negative" "psychological effect" on the children which has "affected their schooling

---

[3] Appellees did not plead § 102.004(a)(1) as a basis for standing in their petition; instead, they pleaded only § 102.003(a)(9) as a basis for standing. This is presumably why the majority does not analyze the merits of standing under § 102.004(a)(1). However, given the facts and circumstances of this case, it would not be appropriate or in the best interests of the children to restrict the standing analysis to only the specific grounds raised in the petition.

and behavior"; (6) K.H. did not attend the children's doctor's appointments and "has a history of not following up" with such appointments; and (7) K.H. "has not shown that she is able to handle being the sole caregiver" for the children or to "provide basic care for them."

Additionally, at the hearing on appellees' motion to consolidate, W.S. agreed that K.H. had been "in and out of jail" during the pendency of the case. W.S. also testified that W.I.H. has been incarcerated throughout the pendency of this case and was serving a ten-year prison sentence that began in 2014. W.S. requested an order making her and B.S. managing conservators of the children and providing that K.H. and W.I.H. would have supervised visitation. W.S. specifically agreed with her counsel that such an order would be in the children's best interests and that, without such an order, "either [K.H.] or [W.I.H.] could just come get the kids and that would significantly impair their physical health or emotional well being."

This evidence supports an implicit finding by "satisfactory proof" that the order requested by appellees was necessary because the children's then-present circumstances would significantly impair their physical health or emotional development. *See id.* Therefore, I would conclude that appellees had standing under § 102.004(a)(1), and I would overrule W.I.H.'s first issue on appeal.

## B. Continuing Exclusive Jurisdiction

Aside from standing, W.I.H. raises several other issues contesting the trial court's judgment. By his third issue, W.I.H. argues the trial court lacked jurisdiction over B.U.H. and J.R.H. because the 25th District Court had acquired continuous, exclusive jurisdiction over those children by rendering its final order in 2012 in the OAG's child support review

action. *See id.* § 155.001(a) ("Except as otherwise provided by this section, a court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order."); *id.* § 155.001(c) ("If a court of this state has acquired continuing, exclusive jurisdiction, no other court of this state has jurisdiction of a suit with regard to that child except as provided by this chapter, Section 103.001(b) [concerning suits requesting adoption], or Chapter 262 [concerning suits by governmental entities to protect the health and safety of a child]."); *id.* § 155.002 ("Except as otherwise provided by this subchapter, a court with continuing, exclusive jurisdiction retains jurisdiction of the parties and matters provided by this title.").

As noted, the record reflects that W.S. filed a motion to transfer the child support action as "intervenor" in the 25th District Court; the 25th District Court granted the motion and transferred the case to the 24th District Court; and the 24th District Court then consolidated the transferred matter with the instant suit. W.I.H.'s third issue argues in part that the 25th District Court erred in granting W.S.'s motion to transfer because the motion to transfer was untimely. I agree.

A party may move to transfer a SAPCR from a court which has already acquired continuing exclusive jurisdiction. *See id.* §§ 155.201–.207. If the motion to transfer is filed "by a petitioner or movant," it is "timely if it is made at the time the initial pleadings are filed." *Id.* § 155.204(b). On the other hand, if a motion to transfer a SAPCR is made by a party other than a petitioner or movant, the motion "is timely if it is made on or before the first Monday after the 20th day after the date of service of citation or notice of the suit or before the commencement of the hearing, whichever is sooner." *Id.* Here, W.S.'s motion to transfer was filed on September 7, 2017, which is more than five years after the child

8

support review action was initially brought and more than fourteen months after the OAG filed its motion to modify. Therefore, regardless of whether W.S. is considered a "petitioner or movant" or neither, her motion to transfer was untimely filed. *See id.*

A trial court does not have authority to transfer a SAPCR in the absence of a timely-filed motion to transfer. *In re C.G.*, 495 S.W.3d 40, 45 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied); *Alexander v. Russell*, 699 S.W.2d 209, 210 (Tex. 1985) (per curiam) ("Any attempted transfer of this cause to the 327th District Court was not for a reason authorized under [the family code] and therefore the judge had no authority to transfer the cause."); *see* TEX. FAM. CODE ANN. §§ 155.201, 202. Thus, the 25th District Court retained continuing, exclusive jurisdiction over the children subject to the 2012 final child support order—B.U.H. and J.R.H. I would sustain W.I.H.'s third issue and conclude that the trial court's orders concerning B.U.H. and J.R.H. should be reversed and the matters remanded for consideration by the 25th District Court. *See* TEX. FAM. CODE ANN. § 155.104(b) ("If a final order is rendered in the absence of the filing of the information from the vital statistics unit, the order is voidable on a showing that a court other than the court that rendered the order had continuing, exclusive jurisdiction.").

## C. Temporary Orders

By his second issue, W.I.H. contends that the trial court abused its discretion by issuing temporary orders excluding him from possession of the children. Section 105.001(c) of the family code provides that, "[e]xcept on a verified pleading or an affidavit in accordance with the Texas Rules of Civil Procedure, an order may not be rendered . . . excluding a parent from possession of or access to a child." *Id.* § 105.001(c). W.I.H. observes that W.S.'s supporting affidavit does not mention him—it only mentions

9

K.H.—and he argues that the temporary orders therefore violated the statute. He further contends that the temporary orders violated public policy as expressed in the family code. *See id.* § 153.001(a)(1) ("The public policy of this state is to . . . assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child . . . ."). However, the final order allows W.I.H. to have supervised visitation with the children, and any complaint about the temporary orders is now moot. *See In re E.R.W.*, 528 S.W.3d 251, 257 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Because the trial court since has rendered a final judgment, Mother's complaints about the temporary orders authorizing emergency removal are moot."); *see also In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.) ("[A] temporary order is superseded by entry of a final order of termination, rendering moot any complaint about the temporary order."). Accordingly, I would overrule W.I.H.'s second issue.

**D.    Other Issues**

By his fourth enumerated issue, W.H. contends that the trial court's ruling constituted a "subversion of parental rights." He does not support the issue with argument or references to authority; therefore, it is waived. *See* TEX. R. APP. P. 38.1(i).

By his fifth and sixth issues, W.I.H. argues the trial court made "improper findings of fact" and "improper conclusions of law." I would construe this issue as challenging the merits of the trial court's order granting managing conservatorship to appellees. A trial court's decision to modify conservatorship is reviewed under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion.

*Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.). In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion. *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.). We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Niskar*, 136 S.W.3d at 753–54.

W.I.H. takes issue with the following findings and conclusions:

6.      As of the filing of this suit, the children subject of this suit had been in the actual care, custody, and possession of the Petitioners for at least six months ending not more than 90 days preceding the date of the petition filed in this case.

. . . .

16.     The whereabouts of Respondent, [K.H.], is generally unknown to Petitioners as Respondent [K.H.] appears to be a transient person.

. . . .

19.     Respondent, [W.I.H.], has had no significant contact with the children subject of this suit since the filing of Petitioner's suit.

20.     Respondent, [W.I.H.], has not yet been granted parole by the Texas Department of Criminal Justice and any date of release is unknown to the Court.

. . . .

22.     Respondent, [W.I.H.], has not provided child support, food, clothing, shelter, medical care, or other necessities of the children since at least the filing of Petitioner's suit.

. . . .

1.      The Court has jurisdiction of the parties to the suit and the children subject of this suit.

11

2.     Petitioners [W.S.] and [B.S.] have standing to bring their suit.

3.     Petitioners [W.S.] and [B.S.] should be appointed as joint managing conservators of the children subject of this suit.

I have already concluded that the record evidence does not support a finding that appellees had actual care, control, and possession of the children for six months preceding the filing of their original petition; therefore, finding of fact number 6 is improper. However, as already explained, I believe that finding is immaterial because the evidence shows appellees had standing under family code § 102.004(a)(1). The remaining findings of fact challenged by W.I.H. are supported by evidence, and the conclusions of law were within the trial court's discretion. In particular, the record supports the trial court's finding that its order was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). I would overrule appellant's fifth and sixth issues.

### III. CONCLUSION

I would find that the court lacked jurisdiction over B.U.H. and J.R.H. because the 25th District Court retained continuing exclusive jurisdiction over those children. Therefore, I concur in the majority's judgment as to B.U.H. and J.R.H. However, I would find that the trial court properly exercised jurisdiction over R.W.H. and P.L.H. and that W.I.H.'s other issues are meritless. I would affirm the trial court's judgment as to R.W.H. and P.L.H., and I respectfully dissent in part on that basis.

DORI CONTRERAS
Chief Justice

Delivered and filed the
3rd day of December, 2020.

12